## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHAL DIVISION

| | | |
|---|---|---|
| ASHLEY HARVEY, individually and as Next Friend of L. H., a Minor | § § § | |
| *Plaintiff,* | § § | **Cause No. 2:18-cv-00164** |
| vs. | § § | **JURY TRIAL DEMANDED** |
| | § | |
| CARTHAGE INDEPENDENT SCHOOL DISTRICT, OTIS AMY, SCOTT SURRATT AND DR. JOSEPH GLENN HAMBRICK | § § § § § § | |
| *Defendant.* | § § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT

**BRAZIL & DUNN, L.L.P.**
Chad W. Dunn
K. Scott Brazil
4201 Cypress Creek Parkway, Suite 530
Houston, Texas77068
Telephone: (281) 580-6310
chad@brazilanddunn.com

**DUNNAM & DUNNAM, L.L.P.**
Jim Dunnam
Andrea Mehta
Eleeza Johnson
4125 West Waco Drive
Waco, Texas 76710
Telephone: (254) 753-6437
Facsimile: (254) 753-7434
jimdunnam@dunnamlaw.com
andreamehta@dunnamlaw.com
eleezajohnson@dunnamlaw.com

ATTORNEYS FOR PLAINTIFF

# TABLE OF CONTENTS

I.  RESPONSE TO DEFENDANTS' STATEMENT OF THE ISSUES ....................................1

II.  INTRODUCTION.......................................................................................................1

III.  FACTS......................................................................................................................2

IV.  PLAINTIFF'S TITLE IX CLAIMS SHOULD NOT BE DISMISSED................................8

    A.  Plaintiff Sets Forth Sufficient Facts to State a Title IX Claim............................8

    1.  Title IX Claim, Generally .............................................................................8

    2.  Defendant Acted With Deliberate Indifference to Plaintiff's Report of Sexual
        Harassment............................................................................................ 10

    3.  Defendants' Response to Plaintiff's Reports was Clearly Unreasonable. ...................... 11

    4.  Plaintiff has Pleaded Sufficient Facts Demonstrating that She was Subject to Further
        Harassment............................................................................................ 15

    5.  Defendants Urge an Implausible Construction of "Official Policy."............................ 16

V.  PLAINTIFF'S CONSTITUTIONAL CLAIMS DO NOT FAIL AS A MATTER OF
    LAW ................................................................................................................... 17

VI.  THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED
    IMMUNITY FROM PLAINTIFF'S CONSTITUTIONAL CLAIMS.................................. 19

VII.  REQUEST FOR LEAVE TO AMEND ................................................................... 20

VIII. CONCLUSION & PRAYER................................................................................. 21

CERTIFICATE OF SERVICE ......................................................................................... 22

# INDEX OF AUTHORITIES

**Federal Cases**                                                                   **Page(s)**

*Barnett v. Tex. Wrestling Ass'n,*
   16 F. Supp. 2d 690 (N.D. Tex. 1998) .......................................................... 17

*Barwicks v. Dart,*
   No. 14-cv-8791, 2016 U.S. Dist. LEXIS 80958 (N.D. Ill. June 22, 2016) ..................... 18

*Beanal v. Freeport-McMoran, Inc.,*
   197 F.3d 161 (5th Cir. 1999) ................................................................ 10

*Butters v. James Madison Univ.,*
   145 F. Supp. 3d 610 (W.D. Va. 2015) ...................................................... 15, 16

*Canty v. Old Rochester Reg'l Sch. Dist.,*
   66 F. Supp. 2d 114 (D. Mass. 1999) .......................................................... 14

*Davis v. Monroe County Bd. of Educ.,*
   526 U.S. 629 (1999) .................................................................... 10, 11, 13

*Doe ex rel. Doe v. Dall. Indep. Sch. Dist.,*
   153 F.3d 211 (5th Cir. 1998) .................................................................. 8

*Doe v. Baylor Univ.,*
   240 F. Supp. 3d 646 (W.D. Tex. 2017) ......................................................... 9

*Doe v. Columbia Univ.,*
   No. Docket Nos. 15-1536 (Lead), 15-1661 (XAP), 2016 U.S. App. LEXIS 13773 (2d Cir. July 29, 2016) ................................................................................. 10

*Doe v. Dall. Indep. Sch. Dist.,*
   220 F.3d 380 (5th Cir. 2000) .................................................................. 8

*Doe v. Taylor Indep. Sch. Dist.,*
   15 F.3d 443 (5th Cir. 1994) ................................................................. 13

*Farmer v. Brennan,*
   511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) .................................... 13

*Fennell v. Marion Indep. Sch. Dist.,*
   963 F. Supp. 2d 623 (W.D. Tex. 2013) ....................................................... 17

*Fin. Acq. Partners LP v. Blackwell,*
   440 F.3d 278 (5th Cir. 2006) ................................................................ 20

*Gant ex rel. Gant v. Wallingford Bd. of Educ.,*
   195 F.3d 134 (2d Cir. 1999) ................................................................ 13

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274, 118 S. Ct. 1989 (1998) ....................................................................................8, 9

*Gulig v. Comm'r*,
    293 F.3d 279 (5th Cir. 2002) ...................................................................................................20

*Jane Doe A v. Green*,
    298 F. Supp. 2d 1025 (D. Nev. 2004) ................................................................................ 14, 17

*Kennard v. Indianapolis Life Ins. Co.*,
    420 F. Supp. 2d 601 (N.D. Tex. 2006) .................................................................................... 20

*Lopez v. Metro. Gov't*,
    646 F. Supp. 2d 891 (M.D. Tenn. 2009) ................................................................................... 9

*Morin v. Moore*,
    309 F.3d 316 (5th Cir. 2002) .................................................................................................... 9

*Odonnell v. Harris County*,
    882 F.3d 528 (5th Cir. 2018) ................................................................................................... 18

*Patterson v. Hudson Area Sch.*,
    551 F.3d 438 (6th Cir. 2009) ................................................................................................... 13

*Peterson v. City of Fort Worth*,
    588 F.3d 838 (5th Cir. 2009) ................................................................................................... 18

*Piotrowski v. City of Hous.*,
    237 F.3d 567 (5th Cir.) ....................................................................................................... 9, 17

*Roe v. Gustine Unified Sch. Dist.*,
    678 F. Supp. 2d 1008 (E.D. Cal. 2009) ................................................................................... 13

*Theno v. Tonganoxie Unified Sch. Dist. No. 464*,
    377 F. Supp. 2d 952 (D. Kan. 2005) ....................................................................................... 14

*United States ex rel. Rafizadeh v. Cont'l Common, Inc.*,
    553 F.3d 869 (5th Cir. 2008) .................................................................................................... 9

*Vance v. Spencer Cty. Pub. Sch. Dist.*,
    231 F.3d 253 (6th Cir. 2000) ............................................................................................. 13, 14

*Williams v. Bd. of Regents*,
    477 F.3d 1282 (11th Cir. 2007) ............................................................................................... 15

**Federal Statutes**

20 U.S.C. § 1681 (2012) ............................................................................................................ 8, 9

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW ASHLEY HARVEY, individually and as Next Friend of L.H., a Minor, and files this her Response to Defendants' Motion to Dismiss Plaintiff's Original Complaint. In support thereof, Plaintiff would show the honorable Court as follows:

## I.    RESPONSE TO DEFENDANTS' STATEMENT OF THE ISSUES

Pursuant to Local Rule CV-7(a)(1), Plaintiff presents a Response to Defendants' Statement of the Issues:

1.    Plaintiff's Title IX Claims Should not be Dismissed.

2.    Plaintiff's Constitutional Claims Should not be Dismissed.

3.    The Individual Defendants are not Entitled to Qualified Immunity from Plaintiff's Constitutional Claims.

## II.   INTRODUCTION

This case arises out of a school district's and school administrators' decision to allow a hostile educational environment to persist despite receiving repeated notice of said environment. Although Defendants incredibly claim that they were powerless to stop the hostile environment in question, the facts before this Court demonstrate that the converse is true. G.C., a minor student at Carthage High School who also plays quarterback for the state champion varsity football team, clandestinely recorded video of L.H. nude, as she was in a private shower/dressing area.  G.C. then systematically and continuously distributed the video to fellow students and faculty.  Despite receiving actual notice, Defendants took no action to cease the distribution of the nude video and in fact continue to allow it to occur to this day.  It is not as though the school's actions in response were ineffective, it is instead the case where the school has taken no remedial or disciplinary action and instead has worked to assist G.C. in avoiding punishment. Had the school taken even minimal steps in response to Plaintiff's

1

report, hundreds of viewings of the recording would have been avoided. Despite actual notice and evidence of G.C.'s conduct, G.C. was given no discipline whatsoever by the school and instead was allowed to continue as the star quarterback.  Meanwhile, L.H. is left to attend Carthage High School, the only public school available to her, while enduring the looks and sneers of students, faculty and administrators who have seen her naked and can continue to do so.

This case arises from Defendants' deliberately indifferent response and complicity with multiple events of student-on-student misconduct, including violations of Texas Penal Code 21.16. Defendants' failure to promptly and appropriately investigate and respond to this misconduct allowed a condition to be created that substantially increased L.H.'s chances of being the subject of said misconduct, as well as others.   Moreover, Defendants' failure to promptly and appropriately investigate and respond to such misconduct furthered gender-based harassment and a hostile environment, effectively denying Plaintiff, and other female students, access to educational opportunities. Defendants' Motion to Dismiss is premised entirely on the argument that it did not have any responsibility to redress conduct that occurred off campus. As set forth below, this is not what the law requires.

## III.   FACTS

Although Defendants state that for the purposes of their Motion Plaintiff's facts are taken as true, Defendants repeatedly omit relevant facts alleged and attempt to distort others in order to shield their improper actions from scrutiny. Plaintiff presents a detailed recitation of the facts in question as set forth in Plaintiff's Original Complaint to aid the Court in its review.

On or about April 30, 2016, after playing volleyball, a student at the defendant high school, L.H., went to a friend's house to shower and then hang out with friends. Plaintiff's Original Complaint and Jury Demand, ECF 1 at 4. At that time, L.H was a freshman. G.C., a male student, was also invited

2

to the friend's house. *Id.* G.C. knew L.H. and other ladies would shower at the friend's house. *Id.* He clandestinely set up his cellular phone in the bedroom positioned to capture the vanity in order to record the girls undressing and dressing before and after they showered. *Id.* L.H. undressed for the shower and dressed following her shower in the bedroom where G.C. had setup the phone recording video. *Id.* at 5.

After completing her shower, L.H. noticed the phone recording for the first time. *Id.* L.H. attempted to stop and delete the recording. *Id.* L.H. was recorded, in multiple frames and in multiple poses, completely naked. *Id.* Another minor female student, M.I., was also recorded nude on the video. *Id.* After unsuccessfully trying to delete the recording and after putting on clothing, L.H. left the bedroom. *Id.*

L.H. then confronted G.C. about the video. *Id.* G.C. admitted to having set up the recording. *Id.* Both L.H. and M.I. demanded that the recording be deleted. *Id.* G.C. refused to delete the recording unless L.H. and M.I. kissed him. *Id.* Reluctantly, L.H. and M.I. kissed G.C. on the cheek. *Id.* G.C. then represented that he deleted the video. *Id.* L.H. texted G.C. a few days after the recording was made to confirm that it had been deleted. *Id.* L.H. believed G.C. that the recording was deleted. *Id.*

Plaintiff has alleged that G.C. had been caught at least one other time recording video/pictures of a named girl and that CISD administrators had notice of G.C.'s prior behavior of recording naked female students. *Id.*

In Fall 2016, L.H. heard some other students make a joke about a video of L.H. in the nude. *Id.* L.H. confronted G.C. and he again confirmed that he had deleted the video and he told L.H. that she was being paranoid. *Id.* Shortly thereafter, L.H. was approached by fellow students and told that a group of male students had been watching a nude video of her. *Id.* L.H. learned that the football

3

team had shared the video. *Id.* Plaintiff has also alleged that an assistant football coach facilitated distribution of the video to a member of the football team. *Id.*

L.H. was embarrassed, shocked, and humiliated. *Id.* She attempted to endure the pain, shock, and humiliation through that Fall semester. *Id.* Unfortunately, the viewings, the harassment, and the jokes never ceased. *Id.* It became apparent that the video would continue to circulate absent intervention from those in authority. *Id.*

On February 22, 2017, L.H. told her mom of the video and its distribution. *Id.* At 7. On February 23, 2017, her mother, Ashley Harvey, reported the incident to the High School Principal, Otis Amy.[1] *Id.* Defendant Amy was informed of the circumstances of the recording and was provided names of numerous students who were witnesses to important events and/or had seen the video. *Id.* Defendant Amy suggested a meeting of the families to discuss and work out the issue. *Id.* Ms. Harvey insisted that the school take action because kids were watching this video and passing it around school. *Id.* Defendant Amy said he would get back to Plaintiff but never did. *Id.*

On February 24, 2017, Harvey sent an email to Defendant Amy asking for a follow up but she never received a response to the email. *Id.* Harvey then called and was finally able to confront Defendant Amy again. *Id.*

Defendant Amy told Harvey that Coach Surrat had asked G.C. about the video and he denied any knowledge thereof. *Id.* Defendant Amy represented that he knew of at least two persons who had seen the video. *Id.* Harvey specifically asked Defendant Amy what he and school district were going to do about the matter and Defendant Amy deflected Harvey to report the matter to the police. *Id.*

---

[1] Otis Amy, while in his youth, was a former football star for Carthage High School. ECF 1 at 7.

4

He did not, as Defendants contend in their Motion, *recommend* that the matter be reported. *See id.* Instead, the school district simply would not deal with it. *See id.* Later that day, on February 24, 2017, Harvey reported the matter to Carthage Police Department. *Id.* Harvey obtained a copy of video excerpts from a student who had it and she provided it to the police. *Id.* at 8.

The following Tuesday, Harvey was told by the assigned police investigator, Carl Harris, that she should schedule a meeting of the families to deal with the issue. *Id.* Coach Surratt's assistant, Mamie Vanover, is the wife of the Carthage police chief. *Id.* On March 1, 2017, Ms. Harvey hand delivered a letter to the police requesting action. *Id.* As she delivered the letter, Officer Harris told Ms. Harvey that it was not too late to let the school handle the matter. *Id.*

On March 1, 2017, Ms. Harvey learned that students were still watching and distributing the video. *Id.* The next day, Ms. Harvey called and scheduled a meeting with the superintendent, Dr. Glenn Hambrick. *Id.* On March 3, Harvey met with Defendant Hambrick in a meeting that was attended in part by Hambrick's female assistant. *Id.* Harvey told Hambrick about the video, the circumstances of its recording, the distribution by G.C., and the multiple viewings of which she was aware. *Id.* Harvey explained that the video was still being distributed and viewed. *Id.* Harvey explained that the school district's continuing inaction created and maintained a hostile school environment for L.H. *Id.* Harvey explained that she had reported the matter to the principal who had taken no action. *Id.* Harvey told the superintendent of the harms and injuries these ongoing actions and inactions were causing L.H. *Id.* at 9.

Defendant Hambrick explained that situations like this were a "he said, she said" and there was nothing that he could do despite the video and documentary evidence. *Id.* At this point, no person of authority had interviewed L.H and none of the school counselors had reached out to L.H. to

support her. *Id.* Defendant Hambrick, in the meeting with Harvey, responded that he would follow up with her but then never did. *Id.*

On March 6, 2017, Defendant Amy called L.H. to his office and Campus Police Officer Hardy was present. *Id.* Defendant Amy had L.H. write out a statement and Officer Hardy told L.H. to text him if she heard anything else. *Id.* L.H. identified to Defendant Amy many students whom she knew to have viewed the video. *Id.*

L.H. and Harvey have been harassed by students and parents who believe their efforts have harmed G.C.'s football career or the school football team's chance at winning another Texas state UIL championship. *Id.*

Since no action had been taken, in March 2017, Harvey reported the matter to the FBI. *Id.* The FBI conducted an investigation and interviewed numerous witnesses at the police headquarters. *Id.* Whenever the FBI would undertake an interview at the police station, police staff would warn other persons involved. *Id.*

The FBI has collected forensic evidence to show that G.C. extensively distributed the video, converted for larger displays, hosted it on a file share platform, and took other actions over an extended time that increased the viewership for the video. *Id.* at 10. CISD officials, including Defendants herein, have been briefed on the evidence collected by the FBI and law enforcement, know of G.C.'s ongoing and continuing acts but have taken no action. *Id.*

Although Defendants incredibly claim that G.C.'s actions did not violate any law,[2] the results of the investigation by the FBI were provided to local law enforcement for prosecution under state law. *Id.* Local law enforcement took no action initially. *Id.* The state attorney general's office gave local

---

[2] ECF 8 at 9 n.4.

law enforcement a deadline of February 2018 to take action. *Id.* In response to the deadline, and reluctantly, local law enforcement gave G.C. pre-trial diversion with no formal charging instrument filed. *Id.* The school district and these Defendants were made aware of the criminal action but still took no school action. *Id.* at 11.

Meanwhile, the school district has adopted a strict student dress code that it only strictly enforces against female students. *Id.* L.H. had been a cheerleader and star volleyball player. *Id.* L.H. had been an A and B student. *Id.* L.H. no longer participates in afterschool sports. *Id.* L.H.'s grades have slipped. *Id.* L.H. has no other public school available to her without incurring the expense and vocational losses from moving residences. *Id.*

CISD has given L.H. no support or counseling to help with her grades or emotional injuries. *Id.* L.H. now sees a pediatric cardiologist, a counselor, and a psychiatrist for treatment for injuries she continues to suffer from. *Id.* L.H. still hears discussion in school about recent viewings of her video. *Id.*[3]

Despite numerous reports of viewings and distribution by specific students, the school has disciplined no student. *Id.* G.C. has been administered no discipline or punishment by the school and the school also failed to administer discipline to the many other students, faculty and football players who viewed and distributed the video on campus and in the football locker room. *Id.* In at least one other incident involving lewd photographs and different students, the school did take some discipline action. *Id.*

---

[3] Indeed, Plaintiff will be able to show that even after the filing of this lawsuit, L.H. has been subjected to ongoing harassment and retaliation by the school – most recently a teacher instructing students in L.H.'s class, with L.H. present, to put up their phones, saying twice that "she was not going to get a lawsuit on her." L.H. has now had to attempt acceleration of her graduation to December 2018 to get out of the increasing hostile environment.

Well settled Title IX law required Carthage ISD to take *some* action and, although not necessary

to be proven, Plaintiffs will show that some action, even minimal, would have substantially improved

L.H.'s educational environment.

## IV.    PLAINTIFF'S TITLE IX CLAIMS SHOULD NOT BE DISMISSED

### A.    Plaintiff Sets Forth Sufficient Facts to State a Title IX Claim

1.    Title IX Claim, Generally

Title IX provides in pertinent part:

> No person . . . shall, on the basis of sex, be excluded from participation in, be denied
> the benefits of, or be subjected to discrimination under any education program or
> activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

The key Supreme Court case that defines the contours of an educational institution's liability

for sexual harassment under Title IX is *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 118

S.Ct. 1989 (1998).  In *Gebser*, the Supreme Court noted that Congress had two principal objectives in

passing Title IX: (1) to avoid the use of federal resources to support discriminatory practices and (2)

to provide individual citizens effective protection against those practices. *Gebser*, 524 U.S. at 286

(*quoting Cannon v. University of Chicago*, 441 U.S. 677, 704, 99 S.Ct. 1946 (1979)).  The express statutory

means of enforcement of Title IX's mandates is administrative with the right to damages arising under

a judicially-created "implied private right of action." *Gebser*, 524 U.S. at 281; *accord, Doe ex rel. Doe v.*

*Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

To be successful on a Title IX post-reporting claim, the plaintiff must show: (1) an appropriate

person who has at a minimum authority to institute corrective measures to end the discrimination (2)

had actual notice of discrimination and (3) must have failed to adequately respond to the notice. *Id.* at

290; *see also Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000).  The school's response

8

must amount to deliberate indifference to the discrimination which transforms the decision into a policy of the school. *Gebser,* 524 U.S. at 290.  "Deliberate indifference" requires showing knowledge and disregard of an excessive risk to the victim's safety, something beyond mere negligence. *Morin v. Moore*, 309 F.3d 316, 322 (5th Cir. 2002); *Piotrowski v. City of Houston*, 237 F.3d 567, 585 (5th Cir. 2001), *cert. denied*, 534 U.S. 820, 122 S.Ct. 53 (2001). Liability under Title IX, as it pertains to sexual harassment policies, can flow from two time periods: (1) when a school is deliberately indifferent before a harassing attack in such a manner that makes the student more vulnerable to the attack itself; or (2) when the school acts with deliberate indifference following an attack in such a manner that causes further harassment to the student. *E.g., Lopez v. Metro. Gov't.*, 646 F. Supp. 2d 891, 917-18 (M.D. Tenn. 2009); *see also Jane Does 1-10 v. Baylor University*, 240 F. Supp. 3d 646 (W.D. Tex. 2017)  (W.D. Tex. Mar. 3, 2017). In the instant case, Plaintiff has made allegations regarding both time periods. Plaintiff also alleges that the school had school-wide policies of sex discrimination in education, generally. Plaintiff's complaint also alleges disparate impact.  Plaintiff has adequately pleaded her Title IX claims.

In this case, there is no question that Defendant received federal funding as contemplated by Title IX, 20 U.S.C. 1681, *et seq*. In its Motion to Dismiss, Defendants claim Plaintiff's Title IX claim fails because (1) The incident occurred off-campus; (2) Plaintiff has not demonstrated that Defendants' response was clearly unreasonable; and (3) Plaintiff did not allege that she suffered further harassment. Defendants also claim that Plaintiff's Official Policy claim fails because Defendants' written policies do not discriminate between male and female students. As shown below, none of Defendants' arguments justify dismissal under Rule 12(b)(6).

Before turning to these arguments, it is important to note that Defendants essentially ask that the Court view the allegations in the light most favorable to them and omit facts that are favorable to Plaintiff, which is impermissible. *United States ex rel. Rafizadeh v. Continental-Common, Inc., et. al.*, 553 F.3d

9

869, 873 n.3 (5th Cir. 2008)(quoting *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 467 (5th Cir. 2006)). Moreover, any ambiguities must be construed "in the light most favorable to upholding the plaintiff's claims." *Doe v. Columbia Univ.*, No. 15-1536, 2016 U.S. App. LEXIS 13773, at *3 (2d Cir. Jul. 29, 2016). See also *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999)(holding that because a motion to dismiss is "viewed with disfavor and is rarely granted…[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.").

2. <u>Defendant Acted With Deliberate Indifference to Plaintiff's Report of Sexual Harassment.</u>

Defendants assert that Plaintiff's deliberate indifference claim fails as a matter of law because the incident in question occurred off campus. In so arguing, Defendants seem to be advocating that position that the only way to establish liability under Title IX is when student-on-student harassment occurs at school. ECF 8 at 7. Title IX law, however, mandates no such requirement.

Defendants cite *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) in support of their argument. ECF 8 at 7. Defendants, however, read *Davis* too narrowly to hold that the harassment must occur on campus. Defendants argue that, only in those circumstances, can the school district be said to have substantial control over G.C. and the context in which the harassment occurs. This argument is not supported by *Davis*. *Davis* holds that recipients of federal funding may be liable for "subject[ing]" their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary

authority.  *Davis*, 526 U.S.  at 646-47.[4] C.G. was a student and Defendant was deliberately indifferent to the sexual harassment of female students by male students.

In any event, Plaintiff's complaint does not stem merely from G.C.'s actual act of taking the video.  Defendants' assertion that the harassment was only the isolated recording of the video unreasonably describes the complaint. Plaintiff's complaint is based on Defendants' deliberate indifference to her report of sexual harassment by G.C., but also faculty and staff who viewed and distributed the video, and who continue to do so without fear of punishment. Plaintiff's complaint includes allegations that students repeatedly viewed this video on campus and on school trips, that G.C. disseminated and distributed the video while on campus, yet Defendants did nothing and are still doing nothing to stop these actions. Plaintiff's complaint is not solely based on Defendants' failure to assess any discipline whatsoever to G.C., although that is part of it.

     3.    <u>Defendants' Response to Plaintiff's Reports was Clearly Unreasonable.</u>

Plaintiff has alleged that Carthage ISD's response to several reports was clearly unreasonable. ECF 1 at 12.  This is all that is required at this stage of the case.

Although Defendants challenge that their response was not clearly unreasonable, this argument ignores the standard at this stage of the litigation and, in any event, would require the weighing of facts.  Defendants depict themselves as "caring" administrators who were helpless in the wake of admittedly reprehensible actions. ECF 8 at 19. They argue that they should be excused for doing nothing because there was nothing they could have done to "eradicate the violation of L.H.'s

---

[4] Defendant seeks to rewrite and distort Davis*'* holding. Nothing in *Davis* requires the alleged harassment to take place on campus.  What *Davis* specifically held was that, in a situation where "the misconduct occurs during school hours and on school grounds...the misconduct is taking place 'under' an 'operation' of the funding recipient." *Id.* at 646.  *Davis* does not hold that this is the only way a funding recipient can have substantial control.

privacy." ECF 8 at 19.  This assertion is nothing more than an assertion of fact to be determined later by the factfinder.  It says nothing about whether Plaintiff has adequately pleaded her claim.  But, just as a funding recipient is liable for failing to adequately respond to a single act of sexual violence, a funding recipient is obligated to adequately respond to a continuous hostile education environment created by the ongoing distribution of this nude video. If Defendants' arguments were to be accepted, a school district could escape Title IX liability by throwing its hands up in the air and arguing that there was simply nothing it could have done. The law demands more of Carthage ISD.

Plaintiff's complaint is not just that Defendants did not do enough, it extends to the facts that Defendants did not do anything. Defendants attempt to argue in their Motion that they reported the matter to the police, and that they told Plaintiff to report the matter, but those steps, even if true, are not sufficient Title IX process for a reported sexual assault and they are similarly inadequate here. Moreover, Plaintiff's complaint is clear that when Plaintiff spoke with Defendant Amy, his position was that nothing could be done, and she could report the matter to the police. ECF 1 at 7. He did not recommend that she report the matter nor did he report the matter himself. Instead, he deflected responsibility from the school district. *See id.*  Defendants also laud their "prompt" actions in asking L.H. to write out a statement and let them know if anything else happened. ECF 9 at 10.[5] However, Plaintiff's complaint is clear that Defendants did not actually take any action to address the harassment L.H. was being subjected to or stop the further spread of the video. *See* ECF 1 at 1-15.

Defendants' proposed bright-line rule (that because it minimally investigated Plaintiff's report - an issue in dispute - its actions cannot be clearly unreasonable as a matter of law) is without support

---

[5] Defendants also attempt to argue that actions were taken by the interview and investigation conducted by the FBI. ECF 8 at 10. This, of course, has no bearing on the analysis of whether Carthage ISD's investigation was clearly unreasonable in light of known circumstances. ECF 8 at 10.

12

in the law. Court after court has recognized that the determination of deliberate indifference – and, as a result, the clearly unreasonable standard – is one better left for the trier of fact.   As stated by the court in *Roe v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1035 (E.D. Ca. 2009)(citations in original)(emphasis added):

> "Deliberate indifference" is more than a "mere reasonableness standard that transforms every school disciplinary decision into a jury question," *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999), and "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). **But "deliberate indifference" is also "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."** *Id.* **"Deliberate indifference will often be a fact-laden question," *for which bright lines are ill-suited.*** Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 457 n.12 (5th Cir. 1994); see also *Doe A. v. Green*, 298 F.Supp.2d at 1035-36 n.4 (stating that no bright line rule in Ninth Circuit cases defines "deliberate indifference," and from review of cases outside Ninth Circuit, "it is clear that most courts have similarly not discovered such a bright-line").

> Similarly, in *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 260-61 (6th Cir. 2000)(emphasis

added), the Sixth Circuit rejected the argument that merely *any* response by the school satisfied its Title

IX obligations:

> The standard announced by the Supreme Court is a "clearly unreasonable response in light of the known circumstances." *Davis*, 526 U.S. at 648. If this Court were to accept Spencer's argument, a school district could satisfy its obligation where a student has been raped by merely investigating and absolutely nothing more. Such minimalist response is not within the contemplation of a reasonable response. **Although no particular response is required, and although the school district is not required to eradicate all sexual harassment, the school district must respond and must do so reasonably in light of the known circumstances. Thus, where a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior. Where a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances.**

*See also E.g., Patterson v. Hudson Area Sch.,* 551 F.3d 438, 448 (6th Cir. 2009)(holding that "even though

a school district takes some action in response to known harassment, if further harassment continues,

a jury is not precluded by law from finding that the school district's response is clearly unreasonable.");
*Canty v. Old Rochester Reg'l Sch. Dist.*, 66 F. Supp. 2d 114, 116-17 (M.D.C. 1999)(denying summary judgment where actions had been taken by the School District because the district could not have concluded that the written reprimands were "timely and reasonable measures to end the harassment" given that it learned that such measures were inadequate).

Significantly, courts have held that "the deliberate indifference or clearly unreasonable standard 'does not lend itself well to a determination by the Court on summary judgment,' and have permitted the claim to go to the jury if the plaintiffs advanced some evidence in support." *Jane Doe A v. Green*, 298 F. Supp. 2d 1025, 1036 (D. Nev. 2004). Even where remedial actions have been taken, the question of whether it is a matter of "too little, too late" is one for the jury. *See Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952, 966 (D. Kan. 2005)(holding that, where a student was subject to pervasive abuse over a number of years and the school implemented additional remedies to some of the more significant incidents, "whether the school's belatedly stepped-up efforts were 'too little, too late' is a question for the jury.").

In the instant case, Defendants did nothing, but if they did do something, it was nothing more than a perfunctory investigation. ECF 1-15. Carthage ISD was on notice that Plaintiff was continuing to suffer harassment based on the dissemination of the video on school grounds. Defendants chose not to take any action and chose to turn a blind eye to Plaintiff's suffering. Plaintiff has alleged that Defendants' response was clearly unreasonable in light of the know circumstances.  Plaintiff has met her burden at this point of the litigation.

4.  <u>Plaintiff has pleaded sufficient facts demonstrating that she was subject to further harassment.</u>

Troublingly, Defendants take the position that Plaintiff did "not allege any additional or further sexual harassment occurred." ECF 8 at 9. Plaintiff's complaint is rife with allegations demonstrating that harassment she suffered as a result of G.C.'s actions and the repeated dissemination and viewings of the video. The law is clear that nothing more is required to be alleged.

*Williams v. Bd. of Regents*, 477 F.3d 1282, 1297 (11th Cir. 2007) is illustrative regarding the "further" harassment requirement.  In *Williams*, the court held that the entity's deliberate indifference was followed by further discrimination even where the student withdrew from the university the day after her rape.  The court found that the university acted with deliberate indifference because, although university police seemed to have performed an investigation, the university failed to provide an adequate response and waited several months before conducting a disciplinary hearing.  The court determined that their actions resulted in further discrimination to the plaintiff:

> Once again, UGA's deliberate indifference was followed by further discrimination, this time in the form of effectively denying Williams an opportunity to continue to attend UGA.  Although Williams withdrew from UGA the day after the January 14 incident, we do not believe that at this stage her withdrawal should foreclose her argument that UGA continued to subject her to discrimination.  In light of the harrowing ordeal that Williams faced on January 14, her decision to withdraw from UGA was reasonable and expected.  Viewing the evidence in the light most favorable to Williams, UGA failed to take any precautions that would prevent future attacks from Cole, Thomas, Brandon Williams, or like-minded hooligans should Williams have decided to return to UGA, either by, for example, removing from student housing or suspending the alleged assailants, or implementing a more protective sexual harassment policy to deal with future incidents.  Considering what had already occurred, UGA's failure was inexplicable and discriminatory.

*Id.* Similarly, in *Butters v. James Madison Univ.*, 145 F. Supp. 3d 610, 621 (W.D. Va. 2015), the court held that it would not dismiss the plaintiff's deliberate indifference claim even though no further *physical* harassment had been alleged:

Here, it is true that Butters does not allege that she suffered any *physical* harassment after her initial meeting with Young. But Butters alleges that she continued to be harassed through the continued dissemination of the video, and by fellow students repeatedly and frequently asking her about it and speaking with her about it. It is plausible that JMU's failure to take any action to stop the spread of the video, even a step as simple as asking that the original owner not distribute it further, could plausibly constitute deliberate indifference that made Butters vulnerable to additional harassment. Thus, the court will not dismiss plaintiff's Title IX claim.

*Id.* (citations omitted).

Plaintiff informed Defendants on repeated occasions of the acts occurring on campus. ECF 1 at 11. Plaintiff even provided names of students who were viewing the video *on campus*. *Id.* at 9. Plaintiff has pleaded that, in the wake of these actions, L.H.'s grades suffered and she required—and still requires—medical help for the significant emotional trauma she has suffered. *Id.* at 11. Defendants chose to turn a blind eye to these facts. Plaintiff has adequately pleaded a claim under Title IX.

5.     Defendants urge an implausible construction of "Official Policy."

Defendants contend that Plaintiff's Official Policy claim also fails as a matter of law. Defendants claim that the district preferences referenced in Plaintiff's complaint "are not official CISD policies." ECF 8 at 11. Defendants argue that Plaintiff has not identified which official policies discriminate against female students. ECF 8 at 10-11. Defendants also contend that these policies "are for all students, not males or females." *Id.* at 11. In doing so, Defendants essentially ignore Plaintiff's complaint. Plaintiff's complaint alleges that Defendants had what amounted to an official policy of protecting a male football star and elevating the school's football program at the cost of its female students. Defendants' argument stems from a flawed and implausible construction of what constitutes "official policy."

Defendants seem to suggest that an official policy must be the policies schools have placed in writing. *See* ECF 8 at 10-11. An institution is hardly going to put into writing that it has a practice of

encouraging discriminatory actions geared towards female students to avoid addressing the misconduct of a male student. Anyway, "[a]n 'official policy' need not be written down or formally adopted." *Fennell v. Marion Indep. Sch. Dist.*, 963 F. Supp. 2d 623, 639 (W.D. Tex. 2013); *see also Barnett v. Texas Wrestling Ass'n*, 16 F. Supp. 2d 690, 695 (N.D. Tex. 1998). *See also Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) ("But a policy may also be evidenced by custom, that is: . . . a persistent, widespread practice . . . ." (emphasis added)). Here, we don't have to guess at what the policy was, Plaintiff reported to the Principal and Superintendent. This isn't the case where a lower level employees actions or inactions are tested against what the policy was. This is a case where the *policymakers*' own behavior is at issue.

If Defendants' argument were to be accepted, as long as any school had a written Title IX policy, it would be free to encourage its employees to ignore that same policy and continue to foster a discriminatory attitude towards female students. Carthage's proposed construction is at odds with common sense and precedent. As the Nevada district court held in *Jane Doe A v. Green*, 298 F. Supp. 2d 1025, 1035 (D. Nev. 2004), "If an institution 'takes timely and reasonable measures to end the harassment, it is not liable under Title IX for prior harassment.' If, on the other hand, an institution either fails to act, **or acts in a way which could not have reasonably been expected to remedy the violation**, then the institution is liable for what amounts to an official decision not to end discrimination." (citations omitted)(emphasis added). The claims are adequately pleaded and Defendants' arguments are irrelevant at this stage of the proceedings.

## V. PLAINTIFF'S CONSTITUTIONAL CLAIMS DO NOT FAIL AS A MATTER OF LAW

Defendants' attack on Plaintiff's constitutional claim is premised on the argument that Plaintiff has not pleaded sufficient facts to demonstrate that a policymaker or official policy or custom was the

17

moving force behind the violations of L.H.'s constitutional rights. ECF 8 at 16. Defendants also claim

that Plaintiff has not "shown any policy, custom, or widespread practice of discrimination" ECF 8 at

13.

As set forth in Section IV.5, Defendants' assertion that an official policy must be written does

not comport with the law. Courts have routinely held that a pattern of action or inaction can constitute

an official policy sufficient to establish liability under § 1983. E.g., *Peterson v. City of Fort Worth*, 588

F.3d 838, 850 (5th Cir. 2009)(holding that prior incidents could form a pattern that can be said to

represent official policy even if unwritten). See also *Odonnel v. Harris Cty.*, 882 F.3d 528, 538 (holding

that "Liability under § 1983 attaches to local government officers 'whose [unlawful] decisions

represent the official policy of the local governmental unit.' And that "...unlawful decisions include

'acquiescence in a longstanding practice or custom which constitutes the standard operating procedure

of the local governmental entity.'")(quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.D. 701, 737 (1989)).

Moreover, courts are clear that at the Motion to Dismiss stage, a plaintiff "need only allege a

pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder

could conclude such a pattern exists." *Bartwicks v. Dart*, No. 14-cv-8791, 2016 U.S. Dist. LEXIS 80958,

at *1 (N.D. Ill. June 22, 2016). Here, although Defendants contend that Plaintiff has only identified

one other act of discrimination, Plaintiff has alleged that Defendant Carthage ISD has official policies

and customs to discriminate against female students and that the district preferences, as a matter of

policy, its male students. ECF 1 at 19. Plaintiff has presented examples of discrimination geared

towards female students, including her own experience, two other female students being recorded

(one on the same recording as Plaintiff), and the district's policies of selectively enforcing its dress

code against female students only. ECF 1 at 11. Contrary to Defendants' assertions that Plaintiff has

not demonstrated that a policymaker was responsible for these policies, Plaintiff has alleged and has

18

provided facts in support of her allegations that these policies were official policies of Carthage Independent School District. ECF 1 at 18, 19, 21. As such, Plaintiff has sufficiently stated a claim. These same facts demonstrate why Plaintiff's equal protection claim should not be dismissed. See ECF 8 at 16.

With respect to Plaintiff's claim that she has a liberty interest in a public education, startlingly, Defendants claim that "there are no facts alleged that indicate L.H. is not safe and healthy." ECF 8 at 15. This assertion is premised on Defendants' allegation that "[t]he school was not the location where her privacy rights were violated." *Id.* Again, Defendants purposefully ignore and ask this Court to ignore the facts that Plaintiff has pleaded that students and administrators were disseminating and viewing this video at school, during school hours and nothing was done to address or curtail the repeated viewing. ECF 1-15. A factfinder could reasonably conclude that L.H. was deprived of her public education by being subjected, without remedy, to ongoing student harassment and continued publication of her nude image.

## VI.  THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S CONSTITUTIONAL CLAIMS.

Defendants' arguments regarding the individual defendants are the same as its arguments regarding why there is no Title IX liability. Defendants' position is that the individual Defendants "neither permitted the conduct to happen under their watch nor do they control distribution on the internet." ECF 8 at 18. Defendants argue that, as a result, Defendants were not deliberately indifferent. Plaintiff's pleading is sufficient at this procedural stage of the case.  The complaint adequately alleges facts the preclude Defendants from the benefit of qualified immunity and, in any event, resolution of the immunity issue requires the resolution of issues of fact.

Defendants repeat their inaccurate and selective assertions of Plaintiff's position – i.e., that Plaintiff wanted Defendants "to eliminate a video that was taken outside of school and punish a student for off-campus conduct in a manner satisfactory to Plaintiffs." ECF 8 at 18. Instead, all Plaintiff requested was that Defendants do something to address the hostile educational environment. Evidence offered at trial will show that simple measures implemented by Defendants could have substantially reduced the extent of distribution of the video as well as the severity of student on student harassment. Anyway, Defendants' may be right that they cannot be held liable for remedial action they implement in response to a complaint but, under these facts, they had to do *something* whether or not it was ultimately effective.  The Court could easily assess the effectiveness of implemented measures, if only they were taken.  Ultimately though, the fact finder will be persuaded by qualified expert testimony and by the effectiveness of remedial measures the school took in other contexts.

In the interest of brevity, Plaintiff incorporates the arguments and authority set forth in Section IV herein by reference.

## VII.    REQUEST FOR LEAVE TO AMEND

If the Court grants any part of Defendants' motion, Plaintiff asks for leave to amend her Complaint. There is a "strong presumption" in favor of allowing amendment rather than dismissal, *Financial Acquisition Partners, L.P. v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), so leave to amend should be freely given. *Estate of Strangi v. C.I.R.*, 293 F.3d 279, 281 (5th Cir. 2002).  This is especially true when the dismissal is under Rule 12(b)(6), because amendment can allow Plaintiff's claims to be heard on their merits.  *Kennard v. Indianapolis Life Ins. Co.*, 420 F.Supp.2d 601, 608-09 (N.D. Tex. 2006).

## VIII.   CONCLUSION & PRAYER

Defendants' repeated refrain that Plaintiff's complaint is premised on there supposedly being only one solitary off-campus act that they were powerless to stop must be rejected. This was not one act. This was Defendants' deliberately indifferent choice to turn a blind eye to a persisting hostile sexual environment that impacted a young woman's access to educational resources. Defendants' actions were based on an official policy of elevating male athletes over female students.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendant's Motion be in all respects DENIED for the reasons set forth herein or that it be DENIED with respect to those claims lacking in merit and that Plaintiff be given leave to amend the Complaint.

Respectfully submitted,

/s/  Chad W. Dunn
**Brazil & Dunn, L.L.P.**
Chad W. Dunn
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
chad@brazilanddunn.com

and

**Dunnam & Dunnam, L.L.P.**
Jim Dunnam
State Bar No. 06258010
Eleeza Johnson
State Bar No. 24058690
Andrea Mehta
State Bar No. 24078992
4125 West Waco Drive
Waco, Texas 76710
Telephone: (254) 753-6437
Facsimile: (254) 753-7434

21

jimdunnam@dunnamlaw.com
eleezajohnson@dunnamlaw.com
andreamehta@dunnamlaw.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been sent via the Court's electronic filing system to counsel for Defendant on May 22, 2018.

/s/  Chad W. Dunn
Chad W. Dunn