IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ASHLEY HARVEY, Individually | § | |
| and as Next Friend of L.H., a Minor, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO: 2:18-cv-00164 |
| | § | |
| CARTHAGE  INDEPENDENT | § | |
| SCHOOL DISTRICT, OTIS AMY, | § | |
| SCOTT SURRATT and DR. JOSEPH | § | |
| GLENN HAMBRICK, | § | |
| Defendants. | § | |

## DEFENDANTS'REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

Defendants Carthage Independent School District ("CISD") and Otis Amy, Scott Surratt, and Joseph Glenn Hambrick (the "Individual Defendants") (all Defendants are collectively referred to as "Defendants") file this Reply to Plaintiffs' Response to Defendants' Motion to Dismiss Plaintiffs' Original Complaint, E.C.F. No. 11, ("Plaintiffs' Response") as follows:

Plaintiff's Complaint ("Complaint") lacks specific facts, speculates as to what Plaintiffs possibly may eventually find in discovery, and relies on conclusory allegations. Plaintiffs erroneously claim that merely making allegations—without providing supporting facts—is sufficient to avoid a motion to dismiss. *See, e.g.*, Pls.' Resp. at  19. "[A] plaintiff must plead specific facts, not mere conclusory allegations. . . . We will not accept as true conclusory allegations or unwarranted deductions of fact." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). The Court is not bound to accept Plaintiffs' conclusions as true; only a complaint that states a plausible claim for relief survives a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Plaintiffs have not and cannot set forth sufficient *facts* to support their causes of actions, and thus Plaintiffs' Title IX and § 1983 claims must be dismissed.

1. **Plaintiffs' Title IX Claims Fail as a Matter of Law**

In order to avoid dismissal, Plaintiffs must show: (1) an appropriate person who had authority to institute corrective measures to end the discrimination (2) had actual knowledge of the discrimination and (3) acted with deliberate indifference. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000)).[1] Plaintiffs cannot show prongs two or three.

Plaintiffs have shown no *facts* that Defendants had actual knowledge of discrimination against L.H.[2] Instead, Plaintiffs allege that they are likely to have support for their allegations after further investigation and discovery and simply conclude—without supporting facts—that Defendants had actual notice of discrimination against L.H. Compl. at 4-5, ¶¶ 16-17; 6, ¶ 38. Plaintiffs make conclusory allegations such as "Defendants' failure to promptly and appropriately respond to the harassment resulted in Plaintiff" being subjected to discrimination. Compl. at 18, ¶ 131. However, Plaintiffs' complaint does not specifically state which Defendants allegedly discriminated against L.H., where, or how.

Again, Plaintiffs conclude that Defendants had "actual notice and evidence of G.C.'s conduct," Pls.' Resp. at 2. But the only actual notice and evidence Plaintiffs provided Defendants pertained to G.C.'s off-campus misconduct from ten months prior. *See* Compl. at 7, ¶ 43 ("On February 23, 2017, Ashley Harvey reported the incident to the High School Principal, Otis Amy."). Although Plaintiffs contend that their Complaint does not stem merely from G.C.'s

---

[1] Defendants do not concede that all named Defendants had authority to institute corrective measures to end the alleged discrimination, but for purposes of this Response Defendants focus on prongs two and three.

[2] Plaintiffs attempt to hide their lack of specific facts by resorting to vague allegations, e.g., "Despite numerous reports of viewing and distribution by specific students. . . ." Pls.' Resp. at 7. *See also* Compl.at at 9, ¶ 74 (L.H. and Harvey have been harassed by students and parents who believe their efforts have harmed G.C.'s football career. . . .").

illicit video, Pls.' Resp. at 11, Plaintiffs' have provided no facts to the contrary. Plaintiffs have not shown that Defendants had actual knowledge of discrimination against L.H. occurring on campus.

Plaintiffs claim, "An assistant football coach facilitated distribution of the video to the member of the football team." Compl. at 6, ¶ 38. The unnamed coach (who may or may not have worked for CISD) allegedly distributed a video, either on or off campus, at an unnamed date, and apparently prior to this matter being reported to Defendants. "L.H. and Harvey have been harassed by students and parents who believe their efforts have harmed G.C.'s football career or the school football team's chance at winning another Texas state UIL championship." Compl. at 9, ¶ 74. Again, Plaintiffs do not allege this happened at school, and Plaintiffs provide no facts other than the conclusion that it was "harassment." "L.H. still hears discussion in school about recent viewings of her video." Compl. at 11, ¶ 94. Yet Plaintiffs do not explain how L.H. "hear[ing] discussion" equates to CISD having any knowledge of harassment or discrimination under Title IX. In fact, Plaintiffs NEVER claim there was harassment that happened at school after the initial report to Amy.

Under the third prong, Plaintiffs also have not shown *facts* that Defendants acted with deliberate indifference. Plaintiffs state, "Harvey explained that the school district's continuing inaction created and maintained a hostile school environment for L.H." Pls.' Resp. at 5; Compl. at 8, ¶ 64. That is a legal conclusion, not a fact, and insufficient to avoid dismissal. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Nevertheless, Plaintiffs' proffered facts contradict their own conclusion that Defendants did nothing. *See* Pls.' Resp. at 11 ("Defendants did nothing and are still doing nothing to stop these actions"); Compl.at 8-9.

- On February 24, Principal Amy told Ms. Harvey that Defendant Surratt had asked G.C. about the video and G.C. denied any knowledge of it. Compl. at 7, ¶¶ 48-50.
- Principal Amy recommended[3] that Ms. Harvey report the matter to the police, and Ms. Harvey filed a police report later that same day. *Id.* at 7, ¶¶ 52-53.
- On March 3, CISD Superintendent Dr. Hambrick met with Ms. Harvey. *Id.* at 8, ¶ 61.
- On March 6, Principal Amy called L.H. to her office and had L.H. write out a statement, and Campus Police Officer Hardy told L.H. to text him if anything else happened. *Id.* at 9, ¶¶ 71-72.
- CISD officials were briefed on the evidence collected by the FBI. *Id.* at 10, ¶ 80.

By Plaintiffs' own account, Defendants took action after Ms. Harvey's report.

Plaintiffs' sarcastically state that Defendants laud their "prompt" actions, Pls.' Resp. at 12, but it was Plaintiffs who first attempted to portray Defendants as nonresponsive to Ms. Harvey's requests. *See, e.g.*, Pls.' Compl. at 7, ¶¶ 43-53 (complaining that Ms. Harvey reported the incident to Defendant Amy on February 23, Defendant Amy suggested the families meet to work it out, Defendant Amy said he would get back to Ms. Harvey but never did, Ms. Harvey emailed Defendant Amy and called Defendant Amy the next day, and Defendant Amy talked with Ms. Harvey). After L.H. waited 10 months to tell her mom about the incident, Ms. Harvey first attempted to contact anyone at CISD on February 23. Compl. at 6-7, ¶¶ 42-43. Defendant Amy promptly spoke with Ms. Harvey. Compl. at 7, ¶ 49. On March 2, Ms. Harvey called Superintendent Hambrick to schedule a meeting, and Superintendent Hambrick promptly met with Ms. Harvey *the very next day*. Compl. at 8, ¶¶ 60-61. These facts illustrate why actual facts are needed to avoid a motion to dismiss; despite Plaintiffs' 10-month delay in reporting the incident, Plaintiffs' have the audacity to derisively imply that a school principal's and superintendent's responding to a parent by the next day is not prompt and somehow inadequate.

---

[3] Plaintiffs' purported distinction as to whether Defendant Amy "recommended" that Ms. Harvey report the matter to the police or Defendant Amy "deflected Harvey to report the matter to the police" is irrelevant. Compl. at 7, ¶ 52; Pls.' Resp. at 16. Either way, Defendant Amy appropriately communicated to Ms. Harvey that she report a potential off-campus criminal matter to the proper authority, the police, which Ms. Harvey did.

Contrary to Plaintiffs' claim, the actions taken by the FBI and the police *do* have a bearing on whether Defendants' investigation was clearly unreasonable. *See* Pls.' Resp. at 12 n 5.[4] Part of Plaintiffs' Complaint is based on Defendants' alleged "failure to assess any discipline whatsoever to G.C." Pls.' Resp. at 11. Plaintiffs repeatedly claim that Defendants failed to discipline G.C. for his out-of-school conduct, the same conduct which authorities determined did not warrant formal charges.[5] In fact, the alleged violation cited in Plaintiffs' Response—unlawful disclosure or promotion of intimate visual material, Tex. Penal Code § 21.16—is a Title 5 felony which would have required disciplinary action if the student had been convicted of such an offense. Pls.' Resp. at 2. When law enforcement became involved, it was not clearly unreasonable for Defendants to allow them to perform their investigation. And when law enforcement determined not to formally charge G.C., CISD was not required to discipline G.C. nor was the decision clearly unreasonable.

Plaintiffs' Response includes an array of cases regarding the deliberate indifference standard originating from coast to coast, California to Massachusetts, but notably none of those outlier cases are binding on this Court. Pls.' Resp. at 13-14. The one case cited by Plaintiffs that is even within the Fifth Circuit is *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646 (W.D. Tex. 2017),

---

[4] Plaintiffs' Response seemingly attempts to shift the analysis to whether Defendants' conduct was reasonable, but it is Plaintiffs' burden to show that Defendants' actions or inaction were "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S at 648.

[5] Had G.C. been convicted of or received deferred prosecution for an offense listed in Title 5 of the Texas Penal Code, the prosecuting attorney would have notified the school. Tex. Code Crim P. 15.27(d)(2). And CISD would have been required to place G.C. in the disciplinary alternative education program (DAEP) even though the conduct occurred off campus. Tex. Educ. Code § 37.006(c), (h); CISD Board Policy FOC (LEGAL) [CISD board policies are available online at https://pol.tasb.org/Home/Index/979] (listing Title 5 felonies, including invasive visual recording, Tex. Penal Code § 21.15).

a district court case that is also not binding on this Court.[6]

The Supreme Court found that there is a limited scope of liability under Title IX for student-to-student sexual harassment:

> The language of Title IX itself—particularly when viewed in conjunction with the requirement that the recipient have notice of Title IX's prohibitions to be liable for damages—also cabins the range of misconduct that the statute proscribes. The statute's plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs.

*Davis*, 526 U.S. at 644 (1999).

> Moreover, because the harassment must occur "under" "the operations of" a funding recipient, see 20 U.S.C. § 1681(a); § 1687 (defining "program or activity"), the harassment must take place in a context subject to the school district's control, Webster's Third New International Dictionary, *supra,* at 2487 (defining "under" as "in or into a condition of subjection, regulation, or subordination"; "subject to the guidance and instruction of"); Random House Dictionary of the English Language, *supra,* at 1543 (defining "under" as "subject to the authority, direction, or supervision of").These factors combine to limit a recipient's damages liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs. Only then can the recipient be said to "expose" its students to harassment or "cause" them to undergo it "under" the recipient's programs.

*Id.* at 645.

Plaintiff's injury comes from a video that was made off-campus and ten months before Defendants had actual notice. There are no factual allegations that after Defendants had notice of the video that any further videos or other harassment took place *at school*. Simply seeing G.C.,

---

[6] Moreover, the facts in *Doe 1* are distinguishable from the present case. In *Doe 1*, ten Baylor University students alleged they were sexually assaulted and when they sought assistance and protection from Baylor, the school discouraged them from reporting their assaults, and failed to investigate the assaults. *Id.* at 652. Here, unlike in *Doe 1*, there are no facts showing any widespread practice of discriminatory responses by Defendants and there is no allegation that any Defendant discouraged L.H. from reporting. *See also infra* section 2. Defendants can be deliberately indifferent and thus liable to Plaintiffs only where "the school 'exercises substantial control over both the harasser and the context" in which the harassment occurs.'" *Id.* at 658 (quoting *Davis*, 526 U.S. at 645). Comparing a campus rape case to off campus online conduct and saying the control was the same simply incompatible with caselaw and logic.

knowing he had a successful athletic career, and knowledge of the video by the public are not compensable examples of harassment or deliberate indifference. Although Defendants exercise control over the school, they do not control the internet. Plaintiffs' Complaint contains many facts about a students' off-campus conduct and other unnamed individuals' sharing of the video, but Plaintiffs do not provide any specific facts alleging discrimination or harassment that occurred *at the school*. Plaintiffs have not met their burden to show that Defendants acted with deliberate indifference. Plaintiffs' Title IX claim must be dismissed.

### 2. Plaintiffs' Constitutional Claims against CISD Fail as a Matter of Law

All of Plaintiffs' constitutional claims brought against CISD pursuant to § 1983 fail as a matter of law. Compl. at 4, ¶ 8; 19-21, ¶¶ 143-160. CISD may be liable only if the constitutional injury was caused by an official policy or custom promulgated by government officials who have final policymaking authority. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120-21 (1992) (citation omitted). Under Texas law, the school district's board of trustees have final policymaking authority. *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993). "The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997) (citation omitted).

Plaintiffs have not shown any policy, custom, or widespread practice of discrimination. *See generally*, Compl. Plaintiffs' Complaint contains no specific facts alleging that Defendants engaged in a pattern or practice of discrimination, referencing only one other incident involving "lewd photographs and different students," and "the school did take some discipline action." Compl. at 12, ¶ 98. Taking some action, as described by Plaintiffs, shows no deliberate indifference and certainly not a widespread practice of discrimination; Defendants took action.

Plaintiffs' have not alleged facts that meet the test in *Peterson v. City of Fort Worth*, 588 F.3d. 838, 850 (5th Cir. 2009), to establish Defendants had an unofficial policy of discrimination.

> A pattern is tantamount to official policy when it is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* at 579 (quoting *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984) (en banc)). Where prior incidents are used to prove a pattern, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster,* 735 F.2d at 842. It is thus clear that a plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582 (citations omitted). A pattern requires similarity and specificity; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir.2005).

*Id.* at 850-51.

Plaintiffs' offer only the conclusory allegations that there was one other incident of a female being recording (no facts provided), that CISD has official policies and customs to discriminate against female students (while conversely alleging that CISD took action against other students who took lewd photographs), that CISD "preferences" male students (no facts provided), and that CISD selectively enforces its dress code against females (no facts provided). Pls.' Resp. at 18. Even Plaintiffs' conclusory allegations, which the Court must not accept as true, *Tuchman*, 14 F.3d at 106, do not amount to a custom as they do not amount to a pattern of similar and specific violations that occurred for so long or so frequently that the conduct warrants attribution to CISD. *See Peterson*, 588 F.3d. at 850.

CISD could not be held liable under § 1983 as a matter of law, even if the Individual Defendants did discriminate (they did not), as the superintendent, principal, and football coach were not policymakers. *See* Defs.' Mot. Dismiss at 13-14.

### 3. The Individual Defendants are Entitled to Qualified Immunity from Plaintiffs' Constitutional Claims

Contrary to Plaintiffs' assertions, Plaintiffs' Complaint does not allege sufficient facts to preclude this Court from finding that the Individual Defendants are entitled to qualified immunity, and the matter does not require the resolution of fact issues. *See* Pls.' Resp. at 19. Plaintiffs' Response offers no legal authority to support Plaintiffs' claim that the Individual Defendants are not entitled to qualified immunity, and the argument they do offer is contrary to the law. *Id*. at 19-20. While Plaintiffs concede that "Defendants' [sic] may be right that they cannot be liable for remedial action they implement in response to a complaint," Plaintiffs then suggest, "The Court could easily assess the effectiveness of implemented measures, if only they were taken." *Id*. at 20.

The very case Plaintiffs cited in their Response, Pls.' Resp. at 12, makes clear that whether the Individual Defendants' actions were effective does not deprive them of their qualified immunity: "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity." *Doe*, 153 F.3d at 219. "[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648. (citation omitted). Contrary to Plaintiffs' wishes, expert testimony as to the effectiveness of the Individual Defendants' responses after receiving notice from Ms. Harvey is not appropriate. Compl. at 21. Although the Individual Defendants' actions may not have been as effective as Plaintiffs would have liked, the Individual Defendants were not deliberately indifferent, and they are thus entitled to qualified immunity.

## CONCLUSION

Plaintiffs complain that Defendants were not successful in preventing G.C. from filming L.H. at a private residence and distributing it via the internet. Defendants are not required to

discipline students for the off-campus, online conduct alleged in Plaintiffs' Complaint. Wherefore, Defendants CISD, Amy, Surratt, and Hambrick respectfully pray that this Court dismiss this suit and deny Plaintiffs all relief they seek and grant Defendants all relief to which they may be entitled, both in equity and in law.

Respectfully submitted,

**EICHELBAUM WARDELL HANSEN POWELL & MEHL, P.C.**

BY: /S/ DENNIS J. EICHELBAUM
DENNIS J. EICHELBAUM
TEXAS BAR NO. 06491700
DEICHELBAUM@EDLAW.COM
*LEAD COUNSEL*

ANDREA L. MOONEY
TEXAS BAR NO. 24065449
ALM@EDLAW.COM
SCOTT W. THOMAS
TEXAS BAR NO. 24075624
SWT@EDLAW.COM

EICHELBAUM WARDELL
HANSEN POWELL AND MEHL, P.C.
5801 TENNYSON PARKWAY, SUITE 360
PLANO, TEXAS 75024
(TEL.) 972-377-7900
(FAX) 972-377-7277
*ATTORNEYS FOR DEFENDANTS*

## Certificate of Service

The undersigned certifies that a true and correct copy of this pleading was served on the following on May 25, 2018: Chad W. Dunn, Brazil & Dunn, L.L.P., 4201 Cypress Creek Pkwy, Suite 350, Houston, Texas 77068 via court-generated, electronic service and via electronic mail to chad@brazilanddunn.com.

/S/ DENNIS J. EICHELBAUM
Dennis J. Eichelbaum