IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ASHLEY HARVEY, INDIVIDUALLY AND AS NEXT FRIEND OF L. H., A MINOR, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO.  2:18-CV-00164-JRG |
| CARTHAGE ISD, OTIS AMY, SCOTT SURRATT, DR. JOSEPH GLENN HAMBRICK, | § § § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court is Defendants Carthage ISD, Otis Amy, Scott Surratt, and Dr. Joseph Glenn Hambrick's Motion to Dismiss Plaintiff's Original Complaint (Dkt. No. 8). On November 19, 2018, the Court held a hearing on the above pending Motion. (Dkt. No. 38.) Having considered the Motion and the Parties' briefing and arguments, for the reasons set forth below, the Court finds the Motion should be and hereby is **GRANTED-IN-PART** but **DENIED-IN-PART**.

**I.   BACKGROUND**[1]

Plaintiff Ashley Harvey, Individually and as Next Friend of L.H. ("Plaintiff") filed suit on April 23, 2018 against Defendants Carthage Independent School District ("Carthage ISD" or "CISD"); the principal of Carthage High School, Otis Amy; the head football coach at Carthage High School, Scott Surratt; and the Superintendent of Carthage ISD, Dr. Joseph Glenn Hambrick. (Dkt. No. 1 ("Complaint").) In the Complaint, Plaintiff alleges five causes of action: (1) a violation of Title IX against Carthage ISD (the "Post-Reporting Deliberate Indifference Claim"); (2) a

---

[1] At the motion to dismiss stage, the Court must accept as true all well-pleaded factual allegations. These background facts are as pleaded by Plaintiff.

violation of Title IX against Carthage ISD (the "Official Policy Claim"); (3) a violation of the 14th Amendment against Carthage ISD, Otis Amy, Scott Surratt, and Glenn Hambrick (the "Procedural Due Process Claim"); (4) a violation of the 14th Amendment against Carthage ISD, Otis Amy, Scott Surratt, and Glenn Hambrick (the "Substantive Due Process Claim"); and (5) a violation of 14th Amendment against Carthage ISD, Otis Amy, Scott Surratt, and Glenn Hambrick (the "Equal Protection Claim").

The circumstances resulting in the Complaint were spurred by an event that occurred off-campus. On April 30, 2016, Plaintiff L.H. allegedly went to a friend's house to shower and hang out. (Complaint ¶ 10.) Unbeknownst to L.H., G.C. (another minor) had set up his cell phone in the bedroom to record the girls undressing. (*Id.* ¶¶ 15–16.) After getting undressed and showering, L.H. noticed the phone recording her. (*Id.* ¶¶ 18–22.) L.H. was unable to stop and delete the recording so she confronted G.C. with another girl who also had been recorded. (*Id.* ¶¶ 23–31.) After both girls kissed him on the cheek, as he requested, G.C. told the girls that he had deleted the video. (*Id.*) In the fall of 2016, L.H. found out that other students, including students on the Carthage High School football team, had watched and distributed the video on campus and in the football locker room. (*Id.* ¶¶ 34–41, 96.) On February 22, 2017, for the first time and nearly ten months after the video had been recorded, L.H. told her mother about the video and its continuing distribution and viewing. (*Id.* ¶ 42.)

On February 23, 2017, L.H.'s mother, Ashley Harvey, reported the incident to Principal Amy. (*Id.* ¶ 43–47.) Ms. Harvey told Principal Amy that students had been watching the video and passing it around school. (*Id.* ¶ 46.) Principal Amy said he would get back to Ms. Harvey; however, Ms. Harvey alleges that Principal Amy failed to do so. (*Id.* ¶ 47.) The next day, after Principal Amy failed to respond to an email, Ms. Harvey contacted him by telephone. (*Id.* ¶ 48–50.) Principal

Amy informed Ms. Harvey that G.C. had been asked about the video by Coach Surratt and he denied any knowledge of it. (*Id.* ¶¶ 48–51.) Despite representing that he knew of at least two people who had seen the video, (*Id.* ¶ 51), Principal Amy suggested that Ms. Harvey report the incident to police. (*Id.* ¶¶ 52–53.) She reported the incident to the Carthage Police Department on February 24, 2017. (*Id.*)

After learning that students were still watching and distributing the video, Ms. Harvey met with Dr. Hambrick on March 3, 2017. (*Id.* ¶¶ 61–70.) Ms. Harvey told Dr. Hambrick about the video, its continued distribution and viewings, and how Principal Amy had not taken any action. (*Id.*) Dr. Hambrick told Ms. Harvey that he would follow-up with her but, as with Principal Amy, he failed to do so. (*Id.* ¶ 70.)

On March 6, 2017, Principal Amy called L.H. into his office and had L.H. write a statement. (*Id.* ¶¶ 71–73.) Campus Police Officer Hardy was present at that meeting. (*Id.*) Plaintiff alleges that as part of this meeting, L.H. identified for Principal Amy students who had viewed the video. (*Id.*) However, yet again, there was no follow-up to this meeting. (*Id.*)

Around the same time, Ms. Harvey reported the incident to the FBI. (*Id.* ¶¶ 75–81.) The FBI conducted an investigation and collected forensic evidence to show that G.C. extensively distributed the video, converted it for larger displays, hosted it on a file share platform, and took other actions that increased the viewership of the video. (*Id.* ¶ 79.) The FBI shared the results of its investigation with Carthage ISD and local law enforcement. (*Id.*) However, local law enforcement gave G.C. pre-trial diversion and no formal charging instrument was filed. (*Id.* ¶¶ 82–84.)

According to the Complaint, L.H. still hears discussion in school about recent viewings of her video. (*Id.* ¶ 4.) She has suffered in a number of ways including declining grades and ceasing

participation in afterschool sports. (*Id.* ¶¶ 87–94.) The school has offered no support or counseling, and she continues to be treated by several physicians and other health care professionals for her injuries. (*Id.*) To date, G.C. has not been disciplined by Carthage ISD in any way. (*Id.* at ¶¶ 96–97.) Nor have the other students, faculty and football players who both viewed and distributed the video on campus. (*Id.* ¶ 96.)

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, the Court need not accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* Still, "a 12(b)(6) inquiry focuses on the allegations in the pleadings, not whether a plaintiff actually has sufficient evidence to succeed on the merits." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 782 (5th Cir. 2007). In other words, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57.

In considering a motion to dismiss for failure to state a claim, a court considers only "the complaint, any documents attached to the complaint, and any documents attached to the motion to

dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).

### III. ANALYSIS

#### A. Title IX Claims

The Supreme Court has established that a recipient of federal funding violates Title IX where the recipient is deliberately indifferent to known acts of teacher-student discrimination. *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 291 (1998). In *Davis*, the Supreme Court extended the deliberate indifference standard to acts of student-on-student harassment. *See generally Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999). More specifically, the Supreme Court concluded that:

> funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

*Id.* at 650. "A recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action." *Id.* at 644. In other words, the deliberate indifference must "cause students to undergo harassment or make them liable or vulnerable to it." *Id.* Importantly, "the harassment must take place in a context subject to the school district's control." *Id.*

When evaluating a school's response, the Supreme Court further held that the actions of school administrators are deliberately indifferent "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 648–49. It is appropriate for a court at the motion to dismiss stage to make a determination of whether a response is "clearly unreasonable" as a matter of law. *Id.*

The Supreme Court went to great lengths to stress the limitations on a recipient's liability under Title IX. For example, "simple acts of teasing and name-calling among school children" do not rise to the level of severe and pervasive behavior to trigger liability under Title IX. *Id.* at 1675. Moreover, "a mere decline in grades is [not] enough to survive a motion to dismiss." *Id.* at 1676.

Defendants argue that Plaintiff's deliberate indifference claim fails as a matter of law because (1) Plaintiff cannot show that CISD knew about the incident; (2) the incident occurred off-campus and the Complaint alleges no on-campus acts of harassment; (3) the harassment was outside the school's control because the video was distributed over the internet; and (4) the Complaint establishes that Defendants acted reasonably because they timely responded. (*See* Dkt. No. 6 at 5–10.) Plaintiff responds that the Complaint is not based on the recording of the video itself, which occurred off-campus; rather, it is based on the school's response once it was made aware of the video and its repeated on-campus distribution and viewing.

Taking all factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has adequately pled that Carthage ISD acted with deliberate indifference once it was put on notice of G.C.'s actions. The Complaint alleges that Carthage ISD was made aware of the initial incident and the resulting on-campus harassment. (*See* Complaint ¶¶ 45, 50, 51, 62, 63, 71, 72, 73, 80, 96.) The Complaint further alleges that after the school was made aware, the ongoing harassment and distribution of the video occurred on-campus, (*Id.* ¶¶ 59, 62, 63, 73, 96), and such on-campus distribution and harassment has been ongoing and pervasive. (*Id.* ¶¶ 62, 63, 73, 74, 94, 95, 96, 109, 110, 111, 115.) If, as Plaintiff alleges, (1) Plaintiff reported the continued distribution of the video and resulting harassment, (2) Principal Amy and Dr. Hambrick knew of students viewing the video on campus, and (3) the school undertook no further investigation other than to ask Coach Surratt about incident, it could be reasonably inferred that

the school's actions were clearly unreasonable in light of the known circumstances. Accordingly, Plaintiff has plausibly stated a deliberate indifference claim against Carthage ISD under Title IX.

Plaintiff also alleges an "official policy claim" under Title IX. (*Id.* ¶¶ 137–142.) "[W]here the Title IX violation in question is caused by an institution's discriminatory policy or custom, courts need not apply the actual notice and deliberate indifference framework typically used in cases involving instructional liability for sexual harassment or assault." *See Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 661 (W.D. Tex. 2017) (citing *Gebser*, 524 U.S. at 290 and *Davis*, 526 U.S. at 642). Defendants argue that Plaintiff's claim fails because the Complaint does not state which "official CISD policies allegedly discriminate" and CISD's policies prohibit sexual harassment and discrimination. (Dkt. No. 8 at 11–12.) Plaintiff responds that the "Complaint alleges that Defendants had what amounted to an official policy of protecting a male football star and elevating the school's football program at the cost of its female students." (Dkt. No. 11 at 16.)

Taking the factual allegations in the Complaint as true, the Court is satisfied that Plaintiff has met her burden under 12(b)(6). Plaintiff alleges that Carthage ISD employees, acting pursuant to a known and established yet unwritten custom and practice, conspired amongst themselves to hide allegations of sexual harassment in order to protect a football player and the school's football program (Complaint ¶¶ 74, 99, 110, 112, 113, 114), and Carthage ISD failed to investigate and report the misconduct and harassment, which involved on-campus occurrences and faculty members (*Id.* ¶ 38, 85, 96, 106–108). If taken as true, these allegations support a reasonable inference that Carthage ISD's policy or custom of inadequately investigating reports of sexual harassment involving football players resulted in Plaintiff's suffering and the continuous on-campus harassment she has endured. *See Doe 1*, 240 F. Supp. 3d at 662 (finding that a policy or custom of "inadequately handling and even discouraging reports of sexual assault" adequately pled

7

under 12(b)(6)).

### B. Constitutional Claims

In this case, Plaintiff alleges that Carthage ISD, and Principal Amy, Coach Surratt, and Dr. Hambrick (collectively, the "Individual Defendants"), while acting as school officials, violated Plaintiff's rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment.

As an initial matter, Plaintiff's constitutional claims against Carthage ISD fail as a matter of law. "Under § 1983, a municipality or local governmental entity such as an independent school district may be held liable only for acts for which it is actually responsible." *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). The Fifth Circuit has made clear that "under Texas law, policymaking authority in an independent school district rests with the board of trustees." *See id.* at 217 (citing *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993)). In rejecting that a principal held such policymaking authority, the Fifth Circuit noted that giving principals the discretion to handle allegations of sexual abuse does not mean they were delegated "the broader authority to formulate official policy on the subject." *See id.* at 216–217. Plaintiff's Complaint fails to allege that the board of trustees had knowledge of Plaintiff's allegations. There is nothing in the Complaint to allege that the Carthage Superintendent, Principal, or Football Coach had final policymaking authority. Rather, the Complaint only alleges that the administrators who Plaintiff reported the incident to were "high-level, policy-setting employees of [Carthage ISD]." (Complaint ¶ 111.) Even accepting this allegation as true, it does not establish that anyone other than the elected trustees of Carthage ISD had final policymaking authority. In short, under Fifth Circuit law, these individual defendants are not final policymakers for CISD. *See Jett*, 7 F.3d at 1245–46; *see also Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 380–

81 (5th Cir. 2007). As such, Plaintiff has failed to plausibly state a claim against Carthage ISD under § 1983.

    *i.   Plaintiff's Due Process Claims*

"To state a cause of action under § 1983 for violation of the Due Process Clause, plaintiffs must show that they have asserted a recognized liberty or property interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law." *Reed v. Kerens Indep. Sch. Dist.*, No. 3:16-CV-1228-BH, 2017 WL 2463275, at *16 (N.D. Tex. June 6, 2017) (quoting *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990) (citations omitted), *cert. denied*, 498 U.S. 1040 (1991)) (internal quotations omitted). The Complaint identifies a liberty interest—L.H.'s "interest in a public education in a minimally safe and healthy public education environment." (Complaint ¶¶ 147, 150.) However, the Complaint fails to allege that the Individual Defendants "intentionally or recklessly deprived" L.H. of that interest. (*See generally* Complaint.)

At most, the Complaint contains "threadbare recitals of a cause of action's elements," which the Court cannot accept as true. *Iqbal*, 556 U.S. at 663. For example, the Complaint alleges that "Plaintiff has also been deprived of a normal high school education due to Defendants' conduct and the resulting educational environment which they caused," "[g]overnment action and inaction, described above, deprived Plaintiff of this liberty interest, in full or in part," and "[s]uch deprivation was without due process of law." (Complaint ¶¶ 147–48.) The Complaint also alleges that "[d]efendants, working in concert, violated the substantive due process rights of juveniles through their policies, procedures, and practices with respect to students' disciplinary infractions." (*See* Complaint ¶¶ 110, 156.) Such threadbare recitals—without supporting factual allegations—are insufficient to support Plaintiff's due process claims. Accordingly, Plaintiff's Substantive Due

Process Claim and Procedural Due Process Claim fail as a matter of law.

ii.   *Plaintiff's Equal Protection Claims*

For a constitutional violation of equal protection, the plaintiff must allege and prove that she received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent. *See Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001); *see also Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 411–12 (5th Cir. 2015). "Allegations [of discriminatory intent] that are merely conclusory, without reference to specific facts, will not suffice." *Fennell*, 804 F.3d at 412 (quoting *Priester v. Lowndes Cty.*, 354 F.3d 414, 420 (5th Cir. 2004)) (alteration in original).

Similar to Plaintiff's due process claims, the Complaint contains no more than "threadbare recitals of a cause of action's elements," which the Court cannot accept as true. *Iqbal*, 556 U.S. at 663. For example, the Complaint alleges that "Plaintiff and L.H. received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent," and "[t]he actions of Defendants amounted [to] purposeful discrimination." (Complaint ¶¶ 158, 160.) On their own, such statements are insufficient to plausibly state a claim for relief. Plaintiff's complaint wholly fails to include any factual allegations indicating that similarly situated students had been treated differently—an essential element to an equal protection violation. While the Complaint contains one allegation that "[i]n at least one other incident involving lewd photographs and different students, the school did take some discipline action," this conclusory allegation fails to show that the school's actions in this instance were motivated by discrimination. (Complaint ¶ 98.) The Court concludes that Plaintiff's Complaint fails to adequately plead a claim for a violation of the equal protection clause. Accordingly, Plaintiff's Equal Protection Claim fails as a matter of law.

### C. Qualified Immunity

Even assuming the Court was to find that the Complaint sufficiently pled violations of the Fourteenth Amendment (both due process and equal protection)—which it does not—the Court finds that Plaintiff has not met her burden to defeat the presumption that the Individual Defendants are entitled to qualified immunity.

Courts employ a two-pronged analysis to determine whether a government official is entitled to qualified immunity: (1) whether the defendant's conduct violated a constitutional right, and (2) whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the violation." *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010). While a court may begin its analysis with either prong, both prongs must be answered in the affirmative for a government official to face liability. *See id.*

The Fifth Circuit requires that plaintiffs alleging claims under 42 U.S.C. § 1983 "meet heightened pleading requirements in cases . . . in which an immunity defense can be raised." *See Jackson v. City of Beaumont Police Dept.*, 958 F.2d 616, 620 (5th Cir. 1992); *see also Streetman v. Jordan*, 918 F.2d 555, 557 (5th Cir. 1990) ("Mere conclusory allegations and bold assertions are insufficient to meet this heightened standard."). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "[C]omplaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss." *Jackson*, 958 F.2d at 620 (quoting *Geter v. Fortenberry*, 849 F.2d 1550, 1554 (5th Cir. 1988)).

Nothing in Plaintiff's Complaint clearly alleges with any particularity that the three

Individual Defendants acted in an objectively unreasonable manner. Failure to act, which is the gravamen of Plaintiff's claims, is not the same as acting in an objectively unreasonable way. As such, even in the face of a constitutional violation, qualified immunity would attach.

## IV. CONCLUSION

For the above reasons, the Court **GRANTS-IN-PART AND DENIES-IN-PART** Defendants' Motion to Dismiss Plaintiff's Original Complaint. (Dkt. No. 8.) It is **ORDERED** that Plaintiff's Procedural Due Process Claim, Substantive Due Process Claim, and Equal Protection Claim against Defendants Carthage ISD, Amy Otis, Scott Surratt, and Dr. Joseph Glenn Hambrick[2] are **DISMISSED WITH PREJUDICE**. However, the Court **DENIES** Defendants' Motion as it relates to Plaintiff's Title IX Claims[3] against Carthage ISD.

The Court further **DENIES** Plaintiff's request for leave to amend its complaint. The deadline for discovery has passed, and Plaintiff acknowledged at the hearing on this Motion that not only have there been no depositions taken thus far in this case but also very limited discovery has been conducted overall. Further, no new facts were brought to light during the hearing that would persuade the Court that Plaintiff could plausibly re-plead their constitutional claims or defeat the Individual Defendants' assertions of qualified immunity. Accordingly, the Court finds that granting Plaintiff leave to amend her complaint is not warranted or justified.

**So ORDERED and SIGNED this 21st day of November, 2018.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[2] Counts 3, 4, and 5 of the Complaint

[3] Counts 1 and 2 of the Complaint