IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ASHLEY HARVEY, Individually, | § | |
| and as Next Friend of L.H., a Minor, | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO: 2:18 cv-00164 |
| v. | § | |
| | § | |
| | § | |
| CARTHAGE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| OTIS AMY, SCOTT SURRATT and | § | |
| DR. JOSEPH GLENN HAMBRICK, | | |
| Defendants. | | |

**PLAINTIFFS' SUBMISSION IN RESPONSE TO THE PRODUCTION OF
DOCUMENTS SUBMITTED *IN CAMERA* TO THE COURT**

TO THE HONORABLE COURT:

COME NOW ASHLEY HARVEY, Individually and as Next Friend of L.H., a Minor,[1]

Plaintiffs herein, and file this their Submission in Response to the Production of Documents

Submitted *In Camera* to the Court. In support thereof, Plaintiffs would show as follows:

## I.   INTRODUCTION AND BACKGROUND FACTS

By Order dated November 21, 2018, this Court directed that Plaintiffs file a Response as to

three specific areas of inquiry by the Court.[2]

### 1.   The purposes for which Plaintiffs seeks G.C.'s academic record.

As it currently stands, this case involves claims against Carthage ISD. Part and parcel of those

claims are allegations that L.H. was discriminated against in violation of Title IX. How Defendant

treated the students involved is central to these claims.  Thus far in these proceedings, Defendant has

---

[1] L.H. reaches the age of 18 within the next 30 days.  Plaintiffs mentions this to make the Court aware
that amendment of the pleadings to reflect the age of majority may be requested if necessary. Ashley
Harvey will remain a proper party in terms of expenses incurred during the pre-18 years of age.
[2] ECF 39 at 1.

taken multiple conflicting positions regarding whether it took any action against the perpetrator, G.C., and if so what action. Whether or not Defendant actually took any action against G.C. or otherwise treated him and male students differently than L.H. and female students is directly relevant to whether or not Defendant violated Title IX.  How students are treated is and should be reflected in educational records.  For example, Defendant has the benefit of L.H.'s entire educational record[3] and, indeed, Defendant painstakingly went through L.H.'s records during Plaintiffs' depositions in an attempt to undermine Plaintiffs' credibility and in an attempt to challenge Plaintiffs' claims.[4]

Any action taken against G.C. by Defendant, including any action taken against him as a result of the allegation of L.H., should be contained in his academic record. Defendant's policy guidelines and Texas law require documentation of disciplinary investigations and outcomes. Indeed, the non-existence of these items within G.C.'s record may be as probative as any evidence in this case. That Defendant did nothing, or did not document as required when it came to G.C., is equally relevant and readily demonstrated by the contents of his academic record. Defendant's written policy further outlines specific levels of discipline or consequence relative to various conduct violations including the violations the subject of this suit. The extent to which CISD officials documented this matter in G.C.'s records demonstrates not only informal district policy, but also whether it purposefully avoided implementation of formal written policy when it came to G.C.[5]  For example, Plaintiffs contend that G.C. previously committed a similar act capturing a nude image of a fellow student(s), for which no

---

[3] L.H.'s educational records, as produced to Plaintiffs by Carthage consists of around 500 pages.

[4] Expedited copies of these depositions have been requested and are anticipated next week.

[5] These allegations by Plaintiffs are not speculation. Evidence developed by Plaintiffs will demonstrate variance from District written policy when it came to G.C. in regard to numerous conduct violations (documented or not).  By further example, the supposed making G.C. "run drills" in response to distribution of child pornography on campus varies from written policy. Even if G.C. were required to run drills months after the allegations arose, explanation of how making a student who is a member of the athletic team run drills in response to conduct violations, when running drills is a daily part of team participation, should be reflected in his educational records.  Plaintiffs expect to prove other such discriminatory treatment in favor of G.C.

2

adverse action was taken against him.   Indeed, there is evidence that G.C. has a pattern of such

behavior.  The extent to which this is or is not documented by the school is probative.

### 2. How G.C.'s academic record (and confidential information therein) is relevant to the particular issues of this case.

The existence or absence of notation of disciplinary or other action in G.C.'s academic record

directly relates to Carthage's shifting claims of whether or not any action was actually taken, and if so

what action.  Plaintiffs are fully confident they will prove G.C. admitted to the central facts of the

video, including distribution on campus. The reasonableness or lack thereof of resulting action by

Defendant goes directly to Plaintiffs' discriminatory treatment. Examples of such are already known

to exist in non-disciplinary records which have been produced such as emails between coaches,

teachers, administrators, and parents regarding the punishment.

Curiously, Defendant has already produced approximately 200 pages of what appear to be

G.C.'s educational records that are the sort Defendant now seeks to withhold.  Documents produced

include emails between staff, between staff and parents, communications from G.C. to the attendance

personnel, documents related to G.C.'s athletics performance, and social media emails to staff wherein

G.C.'s name is mentioned.  The documents produced already include information on other students

likely protected by FERPA, such as other student names and identifying information, which

Defendant has failed to redact.  Indeed, Carthage's submission of documents *in camera* calls into

question why those pages have been submitted *in camera* and not the rest of these records. If these 200

pages have been produced, then why the necessity of *in camera* inspection by the Court of other pages?

This also demonstrates that Defendant's concerns about student privacy are disingenuous given the

documents already produced.  The range of documentation produced begs question of what is being

withheld. Allowing Defendant the opportunity to pick and choose which documents to produce gives

Defendant the ultimate say on relevance.[6] Defendant obviously believes that the 500 pages of L.H.'s file are relevant to the matter at hand as shown from their use at the deposition of L.H. and mom.

That said, comparison of G.C.'s records that have been produced with those of L.H.'s show very disparate treatment as to other matters such as absences, testing accommodations, and other academic matters.  Plaintiffs were often given the run around on trivial matters.  Yet, in the G.C. records Plaintiffs have, G.C. and his parents were treated markedly different.  For example, G.C.'s absences were tolerated and even, in some cases, facilitated. The records regarding like issues for L.H. are dramatically different in terms of her treatment. The extent to which the records of both minors compare goes to the heart of the case that L.H. was subjected to a hostile educational environment, gender-based discrimination and wholesale violations of Title IX.  Without G.C.'s records, Plaintiffs have no other student records at CISD with which to compare.  And the fact that those records Plaintiffs do possess of G.C. show different preferential treatment should advise the Court that in seeking the remainder of G.C.'s records, Plaintiffs are not just fishing for what might be – they are expanding upon what is already known.

**3. Precise topics from within G.C.'s academic record and the duration of same that Plaintiffs reasonably believes are essential to support her claims at issue.**

While creation of an exhaustive list of topics is difficult not knowing what is being withheld, the following topics are those that Plaintiffs currently believe are essential to support her claims:

- Whether or not there is any notation of misconduct by G.C.

- Whether or not there is any notation of corresponding disciplinary action in regard to any allegations of misconduct.

- Whether or not, and to what extent, Defendant investigated allegations of misconduct against G.C.

---

[6]  While Plaintiffs are not aware of the number of documents produced *in camera* to the Court, based on gap in bates labels CISD 000928 to CISD001093 in what Defendant has produced in G.C.'s records to Plaintiffs, Plaintiffs would conclude that there are at least 165 pages of documents being withheld.

- Whether or not, and to what extent, did Defendant vary from District policy in regard to G.C. in any manner, thus exhibiting some disparate treatment of this male student.

- Whether or not any documentation exists regarding the alleged additional incidents with G.C. and nude images of minor young women.

- Communications between the school and G.C.'s parents are relevant to compare with the communications between the school and L.H.'s parents.

- Internal school communications regarding G.C. and L.H. are already showing evidence of routine disparity in the treatment of G.C. compared to L.H. in regard to common issues like attendance.

- Emails between staff regarding the criminal investigation, FBI officers on campus, interviews of other students, and communications with law enforcement including emails involving Mamie Vanover (who is both the Carthage police chief's wife and the administrative assistant to the football coach Surratt) are things known to have happened and one would expect documentation to exist.

The time duration involved would include Ninth Grade to the present - the high school years - and will provide a reasonable relevant time period to the subject at hand (G.C. videotaped L.H. at the end of their ninth grade enrollment). This period will show comparative treatment during the parallel education environment and setting of L.H. and G.C., with like administrators and like educators. Thus, starting the year of the videotape, and continuing though the present is relevant and reasonable in allowing comparison of treatment.[7]

## II.    CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court review the records and determine that they should be provided to Plaintiffs under appropriate protective order provisions.  In the alternative, Plaintiffs submits the Court allow review by Plaintiffs subject to the protective order and the Court's ability to claw back production.

---

[7] While G.C. is currently a senior at Carthage, because of the harassment and oppressive environment relating to the dissemination of the videotape and related concerns, L.H. accelerated her graduation. She graduated August 2018, thus was denied that normal senior year experience and cultural rite of passage and all that entails. She will not experience the memories most of us take for granted in fond recollection.

Respectfully submitted,

 _/s/_ Chad W. Dunn
BRAZIL & DUNN, L.L.P.
Chad W. Dunn
State Bar No. 24036507
3303 Northland Drive, Suite 205
Austin, Texas 78731
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

K. Scott Brazil
State Bar No. 02934050
13231 Champion Forest Drive, Suite 460
Houston, Texas 77069
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
scott@brazilanddunn.com

AND

DUNNAM & DUNNAM, L.L.P.
Jim Dunnam
State Bar No. 06258010
Eleeza Johnson
State Bar No. 24058690
Andrea Mehta
State Bar No. 24078992
4125 West Waco Drive
Waco, Texas 76710
Telephone: (254) 753-6437
Facsimile: (254) 753-7434
jimdunnam@dunnamlaw.com
eleezajohnson@dunnamlaw.com
andreamehta@dunnamlaw.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been filed by ECF and sent to counsel of record via electronic notification on November 30, 2018.

 _/s/_ Chad W. Dunn
CHAD W. DUNN

6