IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ASHLEY HARVEY, Individually | § | |
| and as Next Friend of L.H., a Minor, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO: 2:18-cv-00164 |
| | § | |
| CARTHAGE INDEPENDENT | § | |
| SCHOOL DISTRICT, OTIS AMY, | § | |
| SCOTT SURRATT and DR. JOSEPH | § | |
| GLENN HAMBRICK, | § | |
| Defendants. | § | |

**APPENDIX IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

| EXHIBIT | DESCRIPTION | BATES |
|---|---|---|
| A | Affidavit of Otis Amy | CISD_MSJ_000001-000004 |
| B | Affidavit of Scott Surratt | CISD_MSJ_000005-000007 |
| C | Affidavit of Dr. Joseph Glenn Hambrick | CISD_MSJ_000008-000010 |
| D | Plaintiffs' First Amended Responses to Defendants' First Interrogatories | CISD_MSJ_000011-000017 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ASHLEY HARVEY, Individually | § | |
| and as Next Friend of L.H., a Minor, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO: 2:18-cv-00164 |
| | § | |
| CARTHAGE INDEPENDENT | § | |
| SCHOOL DISTRICT, OTIS AMY, | § | |
| SCOTT SURRATT and DR. JOSEPH | § | |
| GLENN HAMBRICK, | § | |
| Defendants. | § | |

**AFFIDAVIT OF OTIS AMY**

STATE OF TEXAS §
§
COUNTY OF PANOLA §

BEFORE ME, the undersigned authority, on this day personally appeared Otis Amy, who under oath stated as follows:

1. "My name is Otis Amy. I am over eighteen (18) years of age and am legally competent to make this affidavit, which is true and correct, is based on my personal knowledge, and is made voluntarily and not under duress.

2. "I am an employee of the Carthage Independent School District, for all times relevant to the facts in this lawsuit I served as the High School Principal.

3. On February 23, 2017, Ms. Ashley Harvey came to the high school and asked to meet with me. I set aside my other duties at the time and met with her, and she informed me of the videotape G.C. made of her daughter (L.H.) showering at an off-campus private party in the spring of the previous year. Ms. Harvey indicated her daughter had not said anything because she had thought the video had been deleted but had recently been told that it still existed and that students were viewing it. Ms. Harvey indicated to me there were two students naked on the video and provided me the two names (it later turned out the second name was incorrect). At that time, Ms. Harvey also told me she believed the video was in the possession of or had been seen by two students whose names she provided me. I told her we would investigate the matter immediately.

4. During our meeting I suggested that because her family and G.C.'s family had been friends for years that perhaps the two families should get together to see if they could work out the issue and put a stop to the video being shared. Ms. Harvey said she was not interested in meeting with them. I then suggested that because this matter occurred off-campus that she report it to the Carthage Police Department. It is my belief she contacted the police and reported the matter that same day.

5. After Ms. Harvey left my office, I called Coach Suratt, the CISD Athletic Director, because at that time of the day G.C. was scheduled to be with Coach Surratt. I told Coach Surratt I was coming to see him.

6. I then walked to Coach Surratt's office and shared with him what Ms. Harvey had shared with me. Like myself, he was disturbed by the allegations, and he immediately called G.C. to his office. Coach Surratt also called G.C.'s father to tell him of the allegations and to receive permission to look through G.C.'s cell phone (which G.C.'s father approved).

7. When G.C. came in to Coach Surratt's office, he was asked if he had taken a naked video of the two students Ms. Harvey provided me. G.C. denied the video, but under further questioning he asked if we meant the video he took nearly a year ago of L.H. and a different student. He then admitted to having taken that video.

8. Coach Surratt asked G.C. if the video was on his phone, and G.C. said he had deleted it. In my presence, Coach Surratt then asked for G.C.'s phone, which G.C. provided him, and Coach Surratt looked through the phone for photos or video of L.H. He found nothing on the phone.

9. Coach Surratt and I then divided the two students Ms. Harvey told me had seen or distributed the video. We each met with the two that same day and both denied having the video or having seen the video.

10. I spoke with Ms. Harvey later that day. I shared with her that the students had denied seeing the video, and that G.C. did not have the video on his phone. I again recommended she report the matter to the police because the videotaping occurred off campus.

11. Our Chief of the Police was at a conference when Ms. Harvey reported the matter to me. On March 6, 2017, I arranged for L.H. to come in and meet with me and Chief of Policy Hardy and to give a written statement of what occurred. Chief of Police Hardy then gave L.H. his cell number and told her to text him if she was being harassed. He later advised me L.H. never texted him.

**EXHIBIT A:** *Affidavit of Otis Amy*

12. I spoke to the District Attorney on Friday, February 24, 2017. He advised me that the police were investigating and that I should not communicate further with Ms. Harvey pending the outcome of their investigation.

13. I awaited a report from the Carthage Police Department, but they never reported to me that they charged G.C. with any crime. Because he was not charged with a Title V Felony, and because the videotaping took place off-campus, we could not discipline G.C. except through our extracurricular code of conduct, which Coach Surratt did in compliance with the code of conduct.

14. At no time did Ms. Harvey, L.H., or anyone else ever report to me that students possessed or were viewing the video at school or provide me with further names to interview. Had I been given such information I would have immediately investigated, just as I did with the accusations made by Ms. Harvey on February 23, 2017.

15. Soon after Ms. Harvey's report, there was an incident at the school where a student took an upskirt photo of a female student. That student was disciplined consistent with district policy, and because it occurred *at school* the child was sent to a disciplinary alternative school.

16. Due to the L.H. incident and the upskirt incident, we held an all-high school assembly for our students on the dangers and law with regard to inappropriate photos and the internet. We had outside speakers come to the campus and speak to the students.

17. L.H. and Ms. Harvey have never given me any notice L.H. or Ms. Harvey were harassed by students or parents at school who believe their efforts have harmed G.C.'s football career or the school football team's chance at winning another Texas state UIL championship. I was never told by anyone that L.H. or Ms. Harvey was harassed.

18. I investigated each allegation I received immediately and to the best of my abilities. I cooperated with law enforcement and followed the District Attorney's advice. I was never told of the alleged viewing of the video on campus, and we disciplined G.C. for violating the extracurricular code of conduct consistent with CISD policy and with what we have done for other students.

19. Any allegation that G.C. was treated differently because he was a football star is false. At the time Ms. Harvey reported the video to me, G.C. was a junior varsity football player who had broken his hand and not played much that season, and it was unclear who would be the starting quarterback the following year."

"Further Affiant Sayeth Not."

_____
Otis Amy

SWORN to and SUBSCRIBED before me by Otis Amy on the 30 day of November, 2018, to certify which, witness my hand and seal of office.

_____
Notary Public in and for the
State of Texas

My Commission Expires: 5-30-2022
(SEAL)



NETTIE JEAN THOMAS
Notary Public, State of Texas
Comm. Expires 05-30-2022
Notary ID 12423060-0

**EXHIBIT A:** *Affidavit of Otis Amy*

Page 4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ASHLEY HARVEY, Individually | § | |
| and as Next Friend of L.H., a Minor, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO: 2:18-cv-00164 |
| | § | |
| CARTHAGE INDEPENDENT | § | |
| SCHOOL DISTRICT, OTIS AMY, | § | |
| SCOTT SURRATT and DR. JOSEPH | § | |
| GLENN HAMBRICK, | § | |
| Defendants. | § | |

**AFFIDAVIT OF SCOTT SURRATT**

STATE OF TEXAS §
§
COUNTY OF PANOLA §

BEFORE ME, the undersigned authority, on this day personally appeared Scott Surratt, who under oath stated as follows:

1. "My name is Scott Surratt. I am over eighteen (18) years of age and am legally competent to make this affidavit, which is true and correct, is based on my personal knowledge, and is made voluntarily and not under duress.

2. "I am an employee of the Carthage Independent School District, for all times relevant to the facts in this lawsuit I have served as the CISD Athletic Director.

3. On February 23, 2017, I received a call from CISD High School Principal Otis Amy. He informed me that he had just met with Ms. Ashley Harvey, and that she had claimed that G.C. had made a videotape of her daughter (L.H.) showering at an off-campus private party in the spring of the previous year. Mr. Amy indicated Ms. Harvey had said there were two students naked on the video and had provided him with two names (it later turned out the second name was incorrect). He also told me Ms. Harvey believed the video was in the possession of or had been seen by two students whose names she provided him.

4. Mr. Amy and I immediately called G.C. into my office. I also called G.C.'s father to tell him of the allegations and to receive permission to look through G.C.'s cell phone, which his father emphatically approved.

5. When G.C. came in to the office, I asked him if he had taken a naked video of the two students Ms. Harvey provided Mr. Amy. G.C. denied he had such a video. I told him not to lie to me, and he asked if we meant the video he took nearly a year ago of L.H. and a different student. He then admitted to having taken that video.

6. I then asked G.C. if the video was on his phone, and G.C. said he had deleted it. I then asked for G.C.'s phone, which G.C. handed me, and I looked through the phone for photos or video of L.H. I found nothing on the phone.

7. That same day, Principal Otis Amy and I each met with the two students that Ms. Harvey claimed had seen or distributed the video, and both students denied having the video or having seen the video.

8. Because G.C.'s conduct was off campus and because he was not charged with a Title V Felony, G.C. could not be disciplined except through our extracurricular code of conduct. CISD's extracurricular code of conduct permits a student to be disciplined for misuse of cell phone, and he was given the first level protocol, which included suspension from sports for one game and required him to run 20 miles. The code is progressive, so a level two would be for a repeat offense, etc. G.C. was disciplined in the same manner any other athlete would be disciplined for violating the extracurricular code of conduct.

9. At no time did anyone ever indicate that students possessed or were viewing the video at school or provide me with further names to interview. Had I been given such information, I would have immediately investigated, just as I did with the accusations made on February 23, 2017. I was never told that anyone on campus or on a school bus had viewed the video, or that any coach had seen the video.

10. Soon after Ms. Harvey's report, there was an incident at the school where a student took an upskirt photo of a female student. That student was disciplined consistent with district policy, and because it occurred *at school* the child was sent to a disciplinary alternative school.

11. Due to the L.H. incident and the upskirt incident, CISD held an all-high school assembly for our students on the dangers and law with regard to inappropriate photos and the internet. CISD had outside speakers come to the campus and speak to the students. I attended that assembly, and I saw G.C. sitting a few seats away from me during the assembly.

12. L.H. and Ms. Harvey have never given me any notice L.H. or Ms. Harvey were harassed by students. I was never told by anyone that L.H. or Ms. Harvey were harassed.

13. Any allegation that G.C. was treated differently because he was a football star is false. At the time the video was reported to me, G.C. was a junior varsity football player who had broken his hand and not played much that season, and it was unclear who would be the starting quarterback the following year.

14. Plaintiffs repeatedly refer to the fact that G.C. played football, but these allegations were brought to the school in February, well after football season ended. G.C. was playing baseball in the Spring of 2017, so his suspension from athletics was for a baseball game, in which he would have been the starting catcher."

"Further Affiant Sayeth Not."

*Scott Surratt*
Scott Surratt

SWORN to and SUBSCRIBED before me by Scott Surratt on the 30 day of November, 2018, to certify which, witness my hand and seal of office.

*Nettie Jean Thomas*
Notary Public in and for the
State of Texas

My Commission Expires: 5-30-2022
(SEAL)

NETTIE JEAN THOMAS
Notary Public, State of Texas
Comm. Expires 05-30-2022
Notary ID 12423060-0

**EXHIBIT B:** *Affidavit of Scott Surratt*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ASHLEY HARVEY, Individually and as Next Friend of L.H., a Minor, Plaintiffs, | § § § § | |
| v. | § | CIVIL ACTION NO: 2:18-cv-00164 |
| CARTHAGE INDEPENDENT SCHOOL DISTRICT, OTIS AMY, SCOTT SURRATT and DR. JOSEPH GLENN HAMBRICK, Defendants. | § § § § § § § | |

**AFFIDAVIT OF DR. JOSEPH GLENN HAMBRICK**

STATE OF TEXAS      §
                                §
COUNTY OF PANOLA    §

BEFORE ME, the undersigned authority, on this day personally appeared Dr. Joseph Glenn Hambrick, who under oath stated as follows:

1. "My name is Joseph Glenn Hambrick. I am over eighteen (18) years of age and am legally competent to make this affidavit, which is true and correct, is based on my personal knowledge, and is made voluntarily and not under duress.

2. "I am an employee of the Carthage Independent School District, for all times relevant to the facts in this lawsuit I served as the Superintendent of Schools.

3. On February 23, 2017, Carthage High School Principal Otis Amy informed me that he had met with Ashley Harvey who told him G.C. had made a video of her daughter (L.H.) showering at an off-campus private party in the spring of the previous year. He said Ms. Harvey indicated her daughter had not said anything because she had thought the video had been deleted but had recently been told that it still existed and that students were viewing it. I told him to investigate the matter and keep me informed.

4. On March 2, 2017, Ms. Harvey requested a meeting with me. As I was out of the office that day, the meeting was set for March 3, 2017. On that morning, I met with Ms. Harvey, with my assistant present. At no time did Ms. Harvey provide me with additional names to investigate or allegations beyond the taking of the video by G.C; and that students had viewed the video. At no time on that day or

**EXHIBIT C:** *Affidavit of Joseph Glenn Hambrick*                               Page 1
CISD MSJ_000008

**EXHIBIT "C"**

any other day did Ms. Harvey indicate to me that her daughter was being harassed, or that any employee had seen or knew about the video being distributed.

5. It is my practice to permit CISD administrators to perform their professional duties without micromanagement but with supervision and verification. At all times, Mr. Amy kept me apprised of his investigation. Mr. Amy informed me he had suggested Ms. Harvey report the matter to the police, and I agreed, as this was off-campus conduct and we do not have subpoena authority or the forensic tools to search a cell phone beyond looking at what is on it.

6. The Carthage Police Department directed CISD to allow the police to investigate the matter. Once I became aware that the police were investigating, it is our practice to let them investigate so as not to be accused of obstruction of justice. The police will tell us if a student is accused of as Title V felony, at which time we can discipline a student from the regular classroom even if the conduct occurred off campus. Because he was not charged with a Title V Felony, and because the videotaping took place off campus, we could not discipline G.C. except through our extracurricular code of conduct, which Coach Surratt did in compliance with the extracurricular code of conduct.

7. At no time was I ever advised that L.H. was being harassed. Had that occurred, we would have followed our policy to take disciplinary steps and prevent harassment or discrimination.

8. Soon after Ms. Harvey's report, there was an incident at the school where a student took an upskirt photo of a female student. That student was disciplined consistent with district policy, and because it occurred *at school* the child was sent to a disciplinary alternative school.

9. Due to the L.H. incident and the upskirt incident, we held an all-high school assembly for our students on the dangers and law with regard to inappropriate photos and the internet. We had outside speakers come to the campus and speak to the students.

10. L.H. and Ms. Harvey have never given me any notice L.H. or Ms. Harvey were harassed by students or parents at school who believe their efforts have harmed G.C.'s football career or the school football team's chance at winning another Texas state UIL championship. I was never told by anyone that L.H. or Ms. Harvey were harassed.

11. I investigated each allegation I received immediately and to the best of my abilities. I cooperated with law enforcement and followed the District Attorney's advice. We disciplined G.C. for violating the extracurricular code of conduct consistent with CISD policy and with what we have done for other students.

12. Any allegation that G.C. was treated differently because he was a football star is false. At the time Ms. Harvey reported the video to me, G.C. was a junior varsity football player who had broken his hand and not played much that season, and it was unclear who would be the starting quarterback the following year."

"Further Affiant Sayeth Not."

*Joseph Glenn Hambrick*
Joseph Glenn Hambrick

SWORN to and SUBSCRIBED before me by Joseph Glenn Hambrick on the 30 day of November, 2018, to certify which, witness my hand and seal of office.

*Nettie Jean Thomas*
Notary Public in and for the
State of Texas

My Commission Expires: 5-30-2022
(SEAL)

> NETTIE JEAN THOMAS
> Notary Public, State of Texas
> Comm. Expires 05-30-2022
> Notary ID 12423060-0

IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
TEXAS MARSHALL DIVISION

| | | |
|---|---|---|
| ASHLEY HARVEY, Individually and as Next Friend of L.H., a Minor,  Plaintiffs, | § § § § | |
| v. | § § | CIVIL ACTION NO: 2:18-cv-00164 |
| CARTHAGE INDEPENDENT SCHOOL DISTRICT, OTIS AMY, SCOTT SURRATT and DR. JOSEPH GLENN HAMBRICK,  Defendants. | § § § § § § | |

**PLAINTIFFS' FIRST AMENDED RESPONSES TO
DEFENDANTS' FIRST INTERROGATORIES**

To: CARTHAGE INDEPENDENT SCHOOL DISTRICT, OTIS AMY, SCOTT SURRATT and DR. JOSEPH GLENN HAMBRICK, through their attorney of record, Dennis J. Eichelbaum, Eichelbaum, Wardell, Hansen, Powell, & Mehl, P.C. 5801 Tennyson Pkwy, Suite 360, Plano, TX 75024.

Pursuant to Rule 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Ashley Harvey and L.H. serve their first amended objections and answers to Defendants Carthage Independent School District, Otis Amy, Scott Surratt, and Joseph Glenn Hambrick First Set of Interrogatories to Plaintiffs Ashley Harvey and L.H. on the parties of record.

Respectfully submitted,

**BRAZIL & DUNN, L.L.P.**

_/s/ Chad W. Dunn_
Chad W. Dunn
State Bar No. 24036507
K. Scott Brazil
State Bar No. 02934050
4201 Cypress Creek Pkwy., Suite 530
Houston, Texas 77068
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
chad@brazilanddunn.com

**EXHIBIT "D"**

CISD_MSJ_000011

**DUNNAM & DUNNAM, L.L.P.**
Jim Dunnam
State Bar No. 06258010
Eleeza Johnson
State Bar No. 24058690
Andrea Mehta
State Bar No. 24078992
4125 West Waco Drive
Waco, Texas 76710
Telephone: (254) 753-6437
Facsimile: (254) 753-7434
jimdunnam@dunnamlaw.com
eleezajohnson@dunnamlaw.com
andreamehta@dunnamlaw.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the above and foregoing has been sent to counsel of record via electronic mail on October 9, 2018.

                                        /s/Chad W. Dunn
                                        CHAD W. DUNN

Confidential - Attorneys' Eyes Only    3

CISD_MSJ_000013

## PLAINTIFFS' FIRST AMENDED OJBECTIONS AND ANSWERS TO DEFENDANTS' FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1: Identify the persons that L.H. communicated with about the video and G.C.'s sharing thereof, the form and date of the communication.**

OBJECTION: Plaintiffs object to providing each person L.H. communicated with because Plaintiffs are unlikely to recall each and every person to whom L.H. spoke. Furthermore, Plaintiffs object to this request as overly broad and overly burdensome. The request calls for a narrative and seeks for Plaintiffs to marshal all of their evidence. Plaintiffs object to this question insofar as it invades the attorney client communication and work product privileges. Subject to same Plaintiffs have done their best to provide persons responsive to this request,

ANSWER: To the best of her recollection L.H recalls speaking with her counselors, doctors, parents, family, M█████ I███, S██ I██, A██ H██, M████ Z█, J████ Z█, S██ C███, L█ W███, C███ O███, K█ D███, R█ I███, C██ B███, M█ D███, M██ L████, P███ J███, Coach Barker, B████ C██, G██ C███, law enforcement officials, Otis Amy, Christopher Hardy.



The counselors and doctors Plaintiff L.H. spoke with include those listed in Plaintiffs' 2nd Amended Disclosures. L.H. recalls speaking with her grandmother C████ H██████ and her uncle T██ H██████r. As Plaintiff cannot recall each and every date and time of each communication Plaintiff refers Defendants to the documents produced in this matter by both Plaintiffs and Defendants that include medical records, law enforcement records and other records that document conversations regarding the video. Plaintiff spoke to her mother in February of 2016 about the video. Plaintiff initially spoke with G.C., B████ C██ and M████ I██ about the video on the date it was taken, she spoke with them after that date as well but does not recall all such dates. Shortly after the video was taken Plaintiff exchanged text communications with G.C. regarding the video. Plaintiff no longer has access to those messages. Plaintiff does not recall all dates or methods of communication with her family and friends regarding the video.

**INTERROGATORY NO. 2: Identify the students and faculty that viewed and distributed the video.**

OBJECTION: Plaintiffs object to providing each student and faculty with because Plaintiffs are unlikely to know each and every student or faculty member that viewed and distributed the video. Furthermore, Plaintiffs object to this request as overly broad and overly burdensome. The request calls for a narrative and seeks for Plaintiffs to marshal all of their evidence. Subject to same Plaintiffs have done their best to provide persons responsive to this request,

ANSWER: G███ C██, L██ B██, A██ S██, T██ E██, B██ C██, C█ W██, H██ L███, K█ D███, A█ P██, M█ P██, A█ G██, A█ A██, an unknown number of coaches and players have reportedly viewed and shared the video in the school locker room and on the school bus. Plaintiffs anticipate having additional information regarding the identity of faculty, staff and students that view and/or distributed the photos following the receipt of

discovery including but not limited to documentation from law enforcement.

**INTERROGATORY NO. 3: Explain the details of the incident you refer to in your Original Complaint when you state that "G.C. had been caught at least one other time recording video/pictures of a named girl." Include the names of the involved individuals, the date and approximate time of the event, and the location.**

ANSWER: At school in the spring of 2016, G.C. revealed to L.H. and other students including M___ I___ and B___ C___ a nude shot of C___ S___.

G.C. inferred that he took the video/pictures of C___ S___. G.C. was boasting about the video/pictures at school.

**INTERROGATORY NO. 4: What actual notice did the District have of G.C.'s prior behavior of recording naked female students?**

ANSWER: It was no secret, if the school didn't know, it should have.

**INTERROGATORY NO. 5: Explain the details of the investigation conducted by Agent Burton Reavis.**

OBJECTION: Plaintiffs object to the extent this request is overly broad and vague, and unduly burdensome.

ANSWER: Plaintiffs recall the FBI agent explaining that they were unable to provide details regarding their ongoing investigation but did relay the video was massively distributed off G.C.'s phone and that the investigation would cause a dark cloud over Carthage. The FBI agents Plaintiffs spoke with are named in Plaintiffs' 2nd Amended Responses to Disclosure.

**INTERROGATORY NO. 6: Explain how the alleged harassment deprived L.H. of access to educational opportunities or benefits provided by the school.**

OBJECTION: Plaintiffs object to this request as overly broad, vague and overly burdensome specifically regarding the term "the alleged harassment". Plaintiffs are unsure if this refers to the harassment by Defendants, by faculty at CISD, or by students and are unsure as to whether or not Defendants seek information about a specific time period or generally. Plaintiffs further object to the extent the request calls for a narrative and seeks for Plaintiffs to marshal all of their evidence. Subject to same Plaintiffs have done their best to provide a response to this request,

ANSWER: Plaintiff L.H. has endured harassment at the hands of Defendants, school employees and students both on and off campus. The stress and severe anxiety of merely walking the halls of the school knowing that all who pass have seen her naked body made it nearly impossible to just be at school much less participate in any meaningful way. Further knowing that the video was continuing to be passed around and viewed at school with no concern or effort to stop its distribution on the part of any staff, Defendants or adult caused increased anxiety and depression. Having to share a lunch

period with G▆▆▆▆ and not knowing when she may run into him contributed to the mental stress that manifested in physical symptoms. Hearing kids in class whisper about her while watching their phones and knowing the teachers, staff and administration didn't care and were doing nothing, knowing that the school's inaction was taken as permission by students to continue to distribute the video—all of it caused L.H. to no longer be able to participate in school, in activities and caused and made worse the mental and physical abuse L.H. suffered daily.

**INTERROGATORY 7: Explain in detail each example of harassment you claim in this suit, including: date, location, the persons involved, witnesses to the harassment, a description of the harassment, the date and to each person you reported the harassment.**

OBJECTION: Plaintiffs object to this request as duplicative, overly broad, vague and overly burdensome. Plaintiffs further object to the extent the request calls for a narrative and seeks for Plaintiffs to marshal all of their evidence. Subject to same Plaintiffs have done their best to provide a response to this request,

ANSWER: Please see Plaintiffs response to Interrogatory 6, Plaintiffs' Complaint and Response to Defendants' Motion to Dismiss and discovery previously submitted in this suit.

**INTERROGATORY NO. 8: Identify each person who you claim has viewed the video, and the basis for your claim or why you believe that person watched the video.**

OBJECTION: Plaintiffs object to this request as duplicative, overly broad, vague and overly burdensome. Plaintiffs further object to the extent the request calls for speculation, for a narrative response and seeks for Plaintiffs to marshal all of their evidence. Subject to same Plaintiffs have done their best to provide a response to this request,

ANSWER: Please see Plaintiffs responses to Interrogatories 1, 2 & 6, Plaintiffs' Complaint and Response to Defendants' Motion to Dismiss and discovery previously submitted in this suit. Plaintiffs cannot speculate as to why people watched and continue to watch the video and the Defendants did and do nothing about it. Plaintiffs anticipate having additional information regarding the identity of faculty, staff and students that view and/or distributed the photos following the receipt of discovery including but not limited to documentation from law enforcement.

**INTERROGATORY NO. 9: Explain how the video discriminated against L.H.**

OBJECTION: Plaintiffs object to the extent this request seeks to further harass L.H., to the extent it is duplicative, calls for a narrative response and improperly seeks to have Plaintiffs marshal all of their evidence. Subject thereto and without waiving,

ANSWER: Defendants discriminated against LH. Please see Plaintiffs' Complaint and Reply to Defendants Motion to Dismiss.

**INTERROGATORY NO. 10: Identify in detail the official District policies or customs that discriminate against female students.**

OBJECTION: This request seeks an expert opinion and/or legal analysis.

ANSWER: Please see Plaintiffs' Complaint and Reply to Defendants Motion to Dismiss.

**INTERROGATORY NO. 11: Explain in detail the acts or omissions by each Defendant that you believe discriminated against Plaintiffs.**

OBJECTION: Plaintiffs object to this request as duplicative, overly broad, vague and overly burdensome. Plaintiffs further object to the extent the request calls for a narrative and seeks for Plaintiffs to marshal all of their evidence. Subject to same Plaintiffs have done their best to provide a response to this request,

ANSWER:     Please see Plaintiffs response to Interrogatory 6, the documents previously produced in this matter, Plaintiffs' Complaint and Response to Defendants' Motion to Dismiss and discovery previously submitted in this suit.