UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ASHLEY HARVEY, Individually and L. H., Individually | § § § | |
| *Plaintiffs,* | § § | |
| vs. | § § | Cause No. 2:18-cv-00164 |
| | § | JURY TRIAL DEMANDED |
| CARTHAGE INDEPENDENT SCHOOL DISTRICT, OTIS AMY, SCOTT SURRATT AND DR. JOSEPH GLENN HAMBRICK | § § § § § | |
| *Defendant.* | § § | |

**PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT
AND JURY DEMAND[1]**

TO THE HONORABLE JUDGE OF SAID COURT:

G.C., a minor student at Carthage High School who also plays quarterback for the state champion varsity football team, clandestinely recorded video of L.H. nude, as she was in a private shower/dressing area. G.C. then systematically and continuously distributed the video to fellow students, including faculty. Despite receiving actual notice, Defendants took no action to cease the distribution of the nude video and in fact continue to allow it to occur, without discipline, to this day. It is not as though the school's actions in response were ineffective, it is instead the case where the school has taken no remedial or disciplinary action and instead has worked to assist G.C. in avoiding punishment. Had the school taken even minimal steps in response to Plaintiff's report, hundreds of viewings of the recording would have been avoided. Despite actual notice and evidence of G.C.'s conduct, as well as other distributing students, they were

---

[1] Plaintiffs file this amended complaint in compliance with the Court's order (ECF 74) permitting the filing of an amended complaint "solely for the purpose of adding L.H. as a party."

given no discipline whatsoever by the school and instead G.C. was allowed to continue as the star quarterback.  Meanwhile, L.H. is left to attend Carthage High School, the only public school available to her, while enduring the looks and sneers of students, faculty and administrators who have seen her naked and can continue to do so.

This case arises from Defendants' deliberately indifferent response and complicity with multiple events of student-on-student misconduct.  Defendants' failure to promptly and appropriately investigate and respond to this misconduct allowed a condition to be created that substantially increased L.H.'s chances of being the subject of said misconduct, as well as others.  Moreover, Defendants' failure to promptly and appropriately investigate and respond to such misconduct furthered gender-based harassment and a hostile environment, effectively denying Plaintiff, and other female students, access to educational opportunities.  This action alleges violations of Title IX and the U.S. Constitution.  In support thereof, Plaintiff would show the Court as follows:

## I.

## PARTIES

1.     Plaintiff Ashley Harvey (formerly Ashley Soape) is the natural mother of L. H., a cisgender female.  Ashley Harvey brings these claims on her own behalf for losses she incurred as a result of the conduct claimed herein.  L.H., now over the age of 18, brings these claims for all other damages claimed. At all material times, L. H. was living in the County of Panola, State of Texas.  At the time of events complained of herein, L. H. was a student attending Carthage Independent School District.

2.     Defendant, Carthage Independent School District (hereinafter sometimes referred to as "Carthage" or "CISD", is a public educational institution in the County of Panola, State of Texas.  Carthage ISD may be served through its Board President, Dr. Ben Donald at #1 Bulldog Dr. Carthage, TX. 75633.  During all material times, CISD received federal funding for its academic programs and activities.

3.     Otis Amy was, during the material time, the head principal of Carthage High School.  He can be served at 1600 W. Panola St., Carthage TX 75633.

4.     Scott Surratt was, during the material time, the head football coach of Carthage High School.  He can be served at 1600 W. Panola St., Carthage TX 75633.

5.     Dr. Joseph Glenn Hambrick was, during the material time, the Superintendent of Schools at Carthage Independent School District.  He can be served at #1 Bulldog Dr. Carthage, TX. 75633.

## II.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district court's jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

7.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for

equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights. Various actions and/or inactions by Carthage ISD employed law enforcement amount to action under the color of law and therefore jurisdiction and claim is asserted under this statute.

8.      Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.  This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the Fourth Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all Parties reside or resided in this district and the events giving rise to the claims occurred in this district.

### III.

### FACTS

10.     On or about April 30, 2016, after playing volleyball, L.H. went to a friend's house to shower and then hang out with friends.

11.     At that time, L.H was a freshman.

12.     G.C. was also invited to the friend's house.

13.     G.C. is a cisgender male and a minor.

14.     G.C. knew L.H. and other ladies would shower at the friend's house.

15.     G.C. setup his cellular phone in the bedroom positioned to capture the vanity in order to record the girls undressing and dressing before and after they showered.

16.     G.C. had been caught at least one other time recording video/pictures of a named girl. The foregoing allegation is specifically identified by Plaintiff under Federal Rule of Civil Procedure 11(b)(3) as likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery in this case.

17.     CISD administrators had notice of G.C.'s prior behavior of recording naked female students. The foregoing allegation is specifically identified by Plaintiff under Federal Rule of Civil Procedure 11(b)(3) as likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery in this case.

18.     L.H. undressed for the shower and dressed following her shower in the bedroom where G.C. had setup the phone recording video.

19.     After completing her shower, L.H. noticed the phone recording for the first time.

20.     L.H. attempted to stop and delete the recording.

21.     Images from the recording should show L.H. attempting to delete the recording.

22.     L.H. was recorded, in multiple frames and in multiple poses, completely naked.

23.     Another minor cisgender female, M.I., was also recorded nude on the video.

24.     After unsuccessfully trying to delete the recording and after putting on clothing, L.H. left the bedroom.

25.     L.H. then confronted G.C. about the video.

26.     G.C. admitted to having set up the recording.

27.     L.H. demanded the recording be deleted.

28.     M.I. demanded the recording be deleted.

29.     G.C. refused to delete the recording unless L.H. and M.I. kissed him.

30.     Reluctantly, L.H. and M.I. kissed G.C. on the cheek.

31.     G.C. then represented that he deleted the video.

32.     L.H. texted G.C. a few days after the recording was made to confirm that it had been deleted.

33.     L.H. believed G.C. that recording was deleted.

34.     Then, in the Fall, 2016, L.H. heard some other students make a joke about a video of L.H. in the nude.

35.     L.H. confronted G.C. and he again confirmed that he had deleted the video and he told L.H. that she was being paranoid.

36.     Shortly thereafter, L.H. was approached by fellow students and told that a group of male students had been watching a nude video of her.

37.     L.H. learned that the football team had shared the video.

38.     An assistant football coach facilitated distribution of the video to the member of the football team. The foregoing allegation is specifically identified by Plaintiff under Federal Rule of Civil Procedure 11(b)(3) as likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery in this case.

39.     L.H. was embarrassed, shocked, and humiliated.

40.     L.H. attempted to endure the pain, shock, and humiliation through that Fall semester.

41.   Unfortunately, the viewings, the harassment, and the jokes never ceased.  It became apparent that the video would continue to circulate absent intervention from those in authority.

42.   On February 22, 2017, L.H. told her mom of the video and its distribution.

43.   On February 23, 2017, Ashley Harvey reported the incident to the High School Principal, Otis Amy.

44.   Otis Amy, while in his youth, was a former football star for Carthage High School.

45.   Defendant Amy was informed of the circumstances of the recording and was provided names of numerous students who were witnesses to important events and/or had seen the video.

46.   Defendant Amy suggested a meeting of the families to discuss and work out the issue. Harvey insisted that the school take action because kids were watching this video and passing it around school.

47.   Defendant Amy said he would get back to Plaintiffs but never did.

48.   On February 24, 2017, Harvey sent an email to Defendant Amy asking for a follow up but she never received a response to the email.

49.   Harvey then called and was finally able to confront Defendant Amy again.

50.   Defendant Amy told Harvey that Coach Surrat had asked G.C. about the video and he denied any knowledge thereof.

51.   Defendant Amy represented that he knew of at least two persons who had seen the video.

52.    Harvey specifically asked Defendant Amy what he and school district were going to do about the matter and Defendant Amy deflected Harvey to report the matter to the police.

53.    Later that day, on February 24, 2017, Harvey reported the matter to Carthage Police Department.

54.    Harvey obtained a copy of video excerpts from a student who had it and she provided it to the police.

55.    The following Tuesday, Harvey was told by the assigned police investigator, Carl Harris, that she should schedule a meeting of the families to deal with the issue.

56.    Coach Surratt's assistant, Mamie Vanover, is the wife of the Carthage police chief.

57.    On March 1, 2017, Harvey hand delivered a letter to the police requesting action.

58.    As she delivered the letter, Officer Harris told Harvey that it was not too late to let the school handle the matter.

59.    March 1, 2017, Harvey learned that students were still watching and distributing the video.

60.    On March 2, 2017, Harvey called and scheduled a meeting with the superintendent, Dr. Glenn Hambrick.

61.    On March 3, Harvey met with Defendant Hambrick in a meeting that was attended in part by Hambrick's female assistant.

62.    Harvey told Hambrick about the video, the circumstances of its recording, the distribution by G.C., and the multiple viewings of which she was aware.

63.    Harvey explained that the video was still being distributed and viewed.

64.     Harvey explained that the school district's continuing inaction created and maintain a hostile school environment for L.H.

65.     Harvey explained that she had reported the matter to the principal who had taken no action.

66.     Harvey told the superintendent of the harms and injuries these ongoing actions and inactions were causing L.H.

67.     Defendant Hambrick explained that situations like this were a "he said, she said" and there was nothing that he could do despite the video and documentary evidence.

68.     At this point, no person of authority has interviewed L.H.

69.     At this point, none of the school counselors had reached to L.H. to support her.

70.     Defendant Hambrick, in the meeting with Harvey, responded that he would follow up with her but then never did.

71.     On March 6, 2017, Defendant Amy called L.H. to his office and Campus Police Officer Hardy was present.

72.     Defendant Amy had L.H. write out a statement and Officer Hardy told L.H. to text him if she heard anything else.

73.     L.H. identified to Defendant Amy many students whom she knew to have viewed the video.

74.     L.H. and Harvey have been harassed by students and parents who believe their efforts have harmed G.C.'s football career or the school football team's chance at winning another Texas state UIL championship.

75.     In March 2017, Harvey reported the matter to the FBI.

76.     The FBI conducted an investigation.

77.     The FBI interviewed numerous witnesses at the police headquarters.

78.     Whenever the FBI would undertake an interview at the police station, police staff would warn other persons involved. The foregoing allegation is specifically identified by Plaintiff under Federal Rule of Civil Procedure 11(b)(3) as likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery in this case.

79.     The FBI has collected forensic evidence to show that G.C. extensively distributed the video, converted for larger displays, hosted it on a file share platform, and took other actions over an extended time that increased the viewership for the video. The foregoing allegation is specifically identified by Plaintiff under Federal Rule of Civil Procedure 11(b)(3) as likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery in this case.

80.     CISD officials, including defendants herein, have been briefed on the evidence collected by the FBI and law enforcement, know of G.C.'s ongoing and continuing acts but have taken no action. The foregoing allegation is specifically identified by Plaintiff under Federal Rule of Civil Procedure 11(b)(3) as likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery in this case.

81.     The results of the investigation by the FBI were provided to local law enforcement for prosecution under state law.

82.     Local law enforcement took no action initially.

83.     The state attorney general's office gave local law enforcement a deadline of February 2018 to take action.

84.     In response to the deadline, and reluctantly, local law enforcement gave G.C. pretrial diversion with no formal charging instrument filed.

85.     The school district and these defendants were made aware of the criminal action but still took no school action.

86.     Meanwhile, the school district has adopted a strict student dress code that it only strictly enforces against female students.

87.     L.H. had been a cheerleader and star volleyball player.

88.     L.H. had been and A and B student.

89.     L.H. no longer participates in afterschool sports.

90.     L.H.'s grades have slipped.

91.     L.H. has no other public school available to her without incurring the expense and vocational losses from moving residences

92.     CISD has given L.H. no support or counseling to help with her grades or emotional injuries.

93.     L.H. now sees a pediatric cardiologist, a counselor, and a psychiatrist for treatment for injuries she continues to suffer from.

94.     L.H. still hears discussion in school about recent viewings of her video.

95.     Despite numerous reports of viewings and distribution by specific students, the school has disciplined no student.

96.    G.C. has been administered no discipline or punishment by the school and the school also failed to administer discipline to the many other students, faculty and football players who viewed and distributed the video on campus and in the football locker room.

97.    Alternatively, if Defendants now claim they took some action to discipline G.C. and/or students who viewed or distributed the video, such response, if it actually occurred, was clearly unreasonable in light of the known circumstances.

98.    In at least one other incident involving lewd photographs and different students, the school did take some discipline action.

99.    After actively discriminating against the Plaintiff L.H. in order to protect this key player on the football team, the Carthage football coach received a $21,400.00 pay raise in 2017, giving him the district's biggest administrative pay raise, and setting his salary at $154,900, just a little less than the high school football coach at Lake Travis, a 6A school with a student body larger than Carthage ISD.

100.    The football coach's pay increase was made at a time that Carthage ISD's median income was $49,886, a few thousand below the state average, and after Carthage ISD lost $6.9 million in state funding and had been compelled to raise local property taxes, slash most teacher benefits, exceed class-size limits and eliminated 32.5 teaching, security, transportation and administrative positions.

101.    At all material times, the Carthage ISD was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq*.

102.    Carthage ISD implemented and executed policies and customs in regard to the events that resulted in the deprivation of Plaintiffs's constitutional, statutory, and common-law rights.

103.    Carthage ISD is responsible for ensuring that all of its employees are properly trained and supervised to perform their jobs.

104.    Carthage ISD is responsible for the acts and omissions of its employees, agents, part-time student workers and tenants.

105.    Carthage ISD received reports from Plaintiffs concerning the event of misconduct and the sexual harassment she experienced.

106.    Carthage ISD failed to adequately investigate the events Plaintiffs reported in violation of Title IX.

107.    Carthage ISD failed to investigate the misconduct and harassment the Plaintiff L.H. endured of which Defendant had either actual or constructive notice at the time they happened.

108.    Carthage ISD failed to report the criminal act involved in the report it received from the Plaintiffs. The foregoing allegation is specifically identified by Plaintiffs under Federal Rule of Civil Procedure 11(b)(3) as likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery in this case.

109.    Carthage ISD failed to provide a safe academic environment for Plaintiff; faced with the Plaintiff's victimization, Carthage ISD's response, and its officials' conduct, was such that future reasonable students in Plaintiff L.H.'s circumstance would be, and in fact were, chilled from reporting misconduct and harassment.

110.    Carthage ISD employees, including high ranking officials, conspired amongst themselves, and with other school employees, with the common purpose of violating law in relation to the reports of sexual and gender-based harassment that Plaintiff provided them within a timely manner. Such actions deprived prospective students of meaningful information concerning conditions on campus.

111.    The extensive detail of the Plaintiffs' report of student-on-student misconduct and harassment, as well as the numerous reports of others, to these administrators, all of whom were high-level, policy-setting employees of Defendant, did not cause any change in the hostile and discriminatory environment at the school as is averred throughout this Complaint.

112.    Carthage ISD employees, including high ranking officials, conspired amongst themselves, and with other school employees, with the common purpose of violating Plaintiff L.H.'s rights under Title IX including, but not limited to, violating her right to be informed that she could and should report the allegations to the police and Defendant's duty to report the offense.

113.    Carthage ISD employees took several overt acts in furtherance of their common goal, including misleading Plaintiffs., concealing meaningful facts from Plaintiffs, lying to Plaintiffs, misrepresenting their actions to Plaintiffs, failing to prosecute, investigate and report Plaintiff's claims, as well as the related crimes and generally failing to provide Plaintiff L.H. with a safe academic environment free from harassment.

114.    At all times relevant to this Complaint, Defendants failed to protect Plaintiff L.H., and others, as it failed to discharge their duties to provide safety to the students and guests of the school.

115.    As a direct and proximate result of the harassing educational environment created by Defendant's deliberately indifferent response to the sexual and subsequent harassment of Plaintiff L.H., as well as violations of their state and federal legal rights, Plaintiff has suffered and continues to suffer untold psychological damage, profound emotional distress, academic injury, permanent loss of standing in her community and damage to her reputation, and Plaintiff's future relationships have been negatively affected.   Plaintiffs have incurred expenses as a result of this wrongful conduct and Plaintiff Ashley Harvey is entitled to recovery of the expenses she paid.   Plaintiff L.H. is entitled to recover all of her damages.

116.    Plaintiff L.H. has also been deprived of meaningful treatment, including medical and psychological support, as a result of Defendants' conduct and the resulting medical environment which they caused.

117.    Plaintiff L.H. has also been deprived of a normal high school education due to Defendants' conduct and the resulting educational environment which they caused.

118.    Plaintiff L.H. has also been damaged by missed educational opportunities.  Also, her future earning capabilities have been damaged by Defendant's conduct and the resulting hostile educational environment which they caused.

## V.

## CAUSES OF ACTION

## COUNT 1:

## (Against Carthage Independent School District)

## VIOLATION OF TITLE IX

## 20 U.S.C. § 1681, *et seq*.

## APPLICABLE LAW

119.   Plaintiffs refer to this as their post-reporting deliberate indifference claim.

120.   CISD receives federal funds.

121.   Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 168l(a),

states that:

> "No person in the United States shall, on the basis of sex, be excluded from
> participation in, be denied the benefit of, or be subjected to discrimination
> under any education program or activity receiving Federal financial
> assistance .... "

122.   Title IX is implemented through the Code of Federal Regulations. See 34

C.F.R. Part 106. 19. 34 C.F.R. § 106.8(b) which provides:

> " ... A recipient shall adopt and publish grievance procedures providing for
> prompt and equitable resolution of student and employee complaints
> alleging any action which would be prohibited by this part."

123.   In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the

United States Supreme Court recognized that a recipient of federal educational funds

intentionally violates Title IX, and is subject to a private damages action, where the

recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

124.    In *Davis v. Monroe County Board. of Education*, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher.

125.    *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is:

a)      "deliberately indifferent to sexual harassment of which the recipient has actual knowledge," and

b)      "the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."

*Davis*, 526 U.S. at 1669-76.

126.    Title IX jurisprudence as well as Department of Education regulations have long recognized, including specifically at times material to the allegations herein, that a single event can constitute harassment so severe, pervasive and objectively offensive that it deprives its victims of access to the educational opportunities provided by the school:

"The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the harassment is physical.  Indeed, a single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe.  For instance, a single instance of rape is sufficiently severe to create a hostile environment."

U.S. Department of Education, Office of Civil Rights, "Dear Colleague" Letter of April 4, 2011.

127.    Regardless, in the circumstances giving rise to the claims of Plaintiffs, a significant history of male student on female student harassment, resulting from deliberate indifference, if not intent, has been allowed to continue at Carthage ISD for many months.

128.    The sex-based harassment articulated in this complaint was so severe, pervasive, and objectively offensive that it deprived Plaintiff L.H. of access to educational opportunities or benefits provided by the school.

129.    Defendant created and/or subjected Plaintiff L.H. to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because:

a)    Plaintiff was a member of a protected class;

b)    Plaintiff was subjected to sexual harassment in the form of a distribution and continued viewing, even among faculty, of her nude body;

c)    Plaintiff was subjected to harassment based on her sex;

d)    Plaintiff was subjected to policies, procedures and customs that were implemented in a sexually discriminatory manner; and

e)    Plaintiff was subjected to a hostile educational environment created by the Defendants' lack of policies and procedures and failure to properly investigate and/or address the harassment.

130.    Defendant and its officials had actual knowledge of the video, its distribution and the resulting harassment of Plaintiff L.H. created by its failure to investigate and discipline wrongdoers in a timely manner and consistent with federal and state law.

131.    Defendant's failure to promptly and appropriately respond to the harassment resulted in Plaintiff L.H., on the basis of her sex, being excluded from participation in,

being denied the benefits of, and being subjected to discrimination in the Defendant's education program in violation of Title IX.

132.    Defendant failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment, and instead acted with deliberate indifference towards Plaintiff L.H.

133.    Defendant persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff L.H..

134.    Defendant's action and response to reports was clearly unreasonable in light of the known circumstances.

135.    This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

136.    Plaintiff L.H. has suffered emotional distress and psychological damage, and her character and standing in the community has suffered from the harassment fostered as a direct and proximate result of Defendant's deliberate indifference to her rights under Title IX.

**Count 2:**

**(Against Carthage Independent School District)**

**VIOLATION OF TITLE IX**

**20 U.S.C. § 1681, *et seq*.**

**<u>APPLICABLE LAW</u>**

137.    Plaintiffs refer to this as their official policy claim.

138.    The foregoing is incorporated herein by reference.

139.    Defendant has official policies and customs to discriminate against female students.

140.    These official policies, which are longstanding, resulted in the treatment of L.H. before and during the continued harassment.

141.    The district preferences, as a matter of policy, its male students.

142.    L.H. was and is subjected to a discriminatory educational environment.

## COUNT 3:

### (Against Carthage Independent School District,

### Otis Amy, Scott Surratt, and Dr. Joseph Glenn Hambrick)

### FOURTEENTH AMENDMENT - procedural due process

143.    The foregoing is incorporated herein by reference.

144.    Plaintiff and minor L.H. had a liberty interest in a public education.

145.    A public education is guaranteed to L.H. under the Texas Constitution.

146.    Carthage Independent School District is the only public school system available to Plaintiff and minor L.H.

147.    Government action and inaction, described above, deprived Plaintiff of this liberty interest, in full or in part.

148.    Such deprivation was without due process of law.

## COUNT 4:

### (Against Carthage Independent School District,

### Otis Amy, Scott Surratt, and Dr. Joseph Glenn Hambrick)

### FOURTEENTH AMENDMENT - substantive due process

149.    The foregoing is incorporated herein by reference.

150.    Plaintiff and minor L.H. has a liberty interest in a public education in a minimally safe and healthy public education environment.

151.    A public education is guaranteed to L.H. under the Texas Constitution.

152.    In fact, L.H. and Plaintiff are compelled under state law to have L.H. attend school.

153.    Public schools have a custodial authority over students.

154.    Carthage Independent School District is the only public school system available to Plaintiff and minor L.H.

155.    Government action and inaction, described above, deprived Plaintiff of this liberty interest, in full or in part.

156.    Defendants working in concert, violated the substantive due process rights of juveniles through their policies, procedures, and practices with respect to students' disciplinary infractions.

## COUNT 5:

### (Against Carthage Independent School District,

### Otis Amy, Scott Surratt, and Dr. Joseph Glenn Hambrick)

### FOURTEENTH AMENDMENT - equal protection

157.    The foregoing is incorporated herein by reference.

158.    Plaintiff and L.H. received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.

159.   G.C. received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.

160.   The actions of Defendants amounted purposeful discrimination.

## VI.

## <u>REQUEST FOR PERMANENT INJUNCTION</u>

161.   Plaintiffs seek a mandatory injunction ordering the Defendant to refrain from unlawful discrimination and/or retaliation, ordering Defendant to undertake and rectify any and all Title IX and constitutional violations and/or inequities, ordering Defendant and its athletic department to refrain from creating and condoning a hostile sexual harassment and/or discrimination environment against individuals on the basis of sex by immediately ceasing deliberate indifference to the acts complained of herein; and cease interference with the disciplinary process in favor of students who were charged with actions such as G.C.'s.

## VII.

## <u>ATTORNEYS' FEES</u>

162.   Plaintiffs request award of their reasonable and necessary attorneys' fees for this action. *See, e.g.*, 42 U.S.C. §§ 1983 & 1988.

## VIII.

## <u>JURY DEMAND</u>

163.   Plaintiff asserts their rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## IX.

## RELIEF REQUESTED

164. For the foregoing reasons, Plaintiffs respectfully request that the Court enter judgment against Defendants consistent with the relief requested herein, and for any and all relief Plaintiffs may show they are entitled including actual damages, compensatory damages, nominal damages, punitive damages, court and litigation costs, expert fees, attorneys' fees, statutory interest and injunctive relief.

Dated this 15th day of January, 2019.

Respectfully submitted,

**BRAZIL & DUNN, L.L.P.**

 _/s/ Chad W. Dunn_
BRAZIL & DUNN, L.L.P.
Chad W. Dunn
State Bar No. 24036507
3303 Northland Dr. #205
Austin, Texas 78731
Phone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

**DUNNAM & DUNNAM, L.L.P.**
Jim Dunnam (Eastern District Application Pending)
State Bar No. 06258010
Eleeza Johnson (Application Pending)
State Bar No. 24058690
Andrea Mehta (Application Pending)
State Bar No. 24078992
4125 West Waco Drive
Waco, Texas 76710
Telephone: (254) 753-6437
Facsimile: (254) 753-7434
jimdunnam@dunnamlaw.com
eleezajohnson@dunnamlaw.com

andreamehta@dunnamlaw.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing document has been sent via the Court's electronic filing system to counsel for Defendant on January 15, 2019.

/s/  Chad W. Dunn
Chad W. Dunn