IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ASHLEY HARVEY, INDIVIDUALLY AND AS NEXT FRIEND OF L. H., A MINOR, | § § § § § | |
| Plaintiff, | | |
| v. | § § | CIVIL ACTION NO. 2:18-CV-00164-JRG |
| CARTHAGE ISD, OTIS AMY, SCOTT SURRATT, DR. JOSEPH GLENN HAMBRICK, | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Carthage ISD's ("Defendant" or "CISD") Motion for Summary Judgment (the "Motion"). (Dkt. No. 48.) The Court heard oral argument on the above pending motion at the pretrial conference on January 17, 2019. Having considered the Parties' arguments and for the reasons set forth below, the Court finds the Motion should be and hereby is **GRANTED**.

### I. BACKGROUND

This case stems from an off-campus video recording of a female student. On or about April 30, 2016, L.H., who was then a fifteen-year-old high school freshman, was at an off-campus house with a group of students. (Dkt. No. 83 at 3 (citing Dkt. No. 83-2, Ex. B at 12:23–13:15, 14:3–6 (Deposition of L.H.)).) G.C., who was also a freshman at the time, hid his cell phone to secretly record some of the girls undressing. (*Id.*) After L.H. noticed the cell phone recording her, she approached G.C. about the video and asked him to delete it. (Dkt. No. 83 at 3 (citing Deposition of L.H. at 14:20–15:1, 16:3–16:15).) G.C. represented that he would delete the video. (Deposition

of L.H. at 15:13–18.) According to L.H., after the initial recording, she asked G.C. multiple times to confirm that he had deleted the video, and each time he assured her that he had. (*Id.* at 15:19–23.)

In February 2017, L.H. was asked by another student about the video. (*Id.* at 21:17–22:23.) She was subsequently told that the video had been air-dropped from someone riding a school bus, circulated in class, watched in class, and watched in the school's athletic locker room. (*Id.* at 21:17–24, 23:14–24:4.) However, L.H. never witnessed anyone watching the video (either on or off-campus) nor did she herself watch the video.[1] (*Id.* at 24:16–20.) Nor did she report these specific incidents to any staff member at CISD or complain about them to any staff member at CISD. (*Id.* at 24:25–25:10.) L.H. did confront G.C. about the video, and he denied distributing it. (*Id.* at 23:6–13.)

On February 22, 2017, L.H. told her mother Ashley Harvey about the video. She also told her about its distribution to CISD students. (Dkt. No. 83, Ex. A at 14:21–16:6 (Deposition of Ashley Harvey).) The next day, February 23, 2017, Ms. Harvey reported the incident to Carthage High School Principal Otis Amy. (Dkt. No. 83, Ex. E at 51:13–53:7, 70:3–10 (Deposition of Otis Amy).) According to Principal Amy, Ms. Harvey gave him the name of two students who had either seen or were distributing the video and the name of the other girl who was also recorded in the video. (Dkt. No. 50-1 at CISD MSJ_000001, ¶ 3 (Affidavit of Otis Amy); *see also* Deposition of Otis Amy at 70:3–10.) According to Ms. Harvey, she gave him the name of possibly four students who had either seen or distributed the video. (Deposition of Ashley Harvey at 20:7–21:8.) Principal Amy told Ms. Harvey that he would investigate and get back to her within a few days. (Deposition of Otis Amy at 54:16–55:6; *see also* Affidavit of Otis Amy ¶ 4.) He also suggested a

---

[1] Ms. Harvey also never witnessed a student watching or distributing the video. (Deposition of Ashley Harvey at 22:2–8.)

2

meeting with the parents and involving the police in the investigation. (*Id.*) It is undisputed that prior to February 23, 2017, neither Ms. Harvey nor L.H. reported the video to anyone at CISD. (Deposition of Ashley Harvey at 72:5–11.)

That same day, Principal Amy contacted both CISD's Chief of Police Christopher Hardy and Coach Surratt. (*Id.* ¶¶ 5–6; Dkt. No. 83-3, Ex. C at 45:11–16, 48:4–49:25 (Deposition of Christopher Hardy)). Officer Hardy told Principal Amy to file a complaint and conduct an investigation. (Deposition of Christopher Hardy at 49:5–14.) Principal Amy met with Coach Surratt and told him what Ms. Harvey had reported. (Affidavit of Otis Amy ¶¶ 5–9.) Coach Surratt called G.C.'s father and received permission to look through G.C.'s cell phone. (*Id.*) Principal Amy and Coach Surratt then met with G.C. and asked him about the video. (*Id.*) G.C. admitted to recording L.H. and another minor female student undressing. (*Id.*; *see also* Deposition of Ashley Harvey at 36:24–37:2; Dkt. No. 83-7, Ex. G at 40:19–41:24 (Deposition of Surratt).) Coach Surratt looked through G.C.'s cell phone but he did not find the video. (Affidavit of Otis Amy ¶¶ 5–9.) Principal Amy and Coach Surratt also met with the two students who Ms. Harvey reported had seen or distributed the video. (*Id.*) According to Principal Amy, both students denied the allegations. (*Id.*) Principal Amy then called Ms. Harvey and told her that they had spoken to G.C. and the two students. (*Id.*; Deposition of Ashley Harvey at 22:16–25:13.) However, according to Ms. Harvey, Principal Amy told her that both students had admitted to seeing the video. (Deposition of Ashley Harvey at 23:12–18.)

On February 24, 2017, Ms. Harvey reported the incident to the police. (Deposition of Ashley Harvey at 38:24–25, 58:13–18.) Like Principal Amy, the police suggested a meeting between the families. (*Id.* at 72:12–16.) Principal Amy also spoke with the district attorney who advised him that "the police were investigating and [he] should not communicate further with Ms.

Harvey pending the outcome of their investigation." (Affidavit of Otis Amy ¶ 12.) Officer Hardy also spoke with the district attorney and was told the same. (Deposition of Christopher Hardy at 70:8–16.) Despite the involvement of the district attorney, G.C. was never charged with a crime. (Affidavit of Otis Amy ¶ 13.)

On March 3, 2017, Ms. Harvey met with CISD Superintendent Glenn Hambrick. (Dkt. No. 50-1 at CISD MSJ_000008 (Affidavit of Glenn Hambrick); *see also* Deposition of Ashley Harvey at 43:25–44:5; 45:15–21.) According to Ms. Harvey, she told Superintendent Hambrick the circumstances surrounding the video, including the watching and viewing of the video on "his campus," and she identified the teacher during whose class period the students watched the video. (Deposition of Ashley Harvey at 45:4–46:6; 110:1–111:3.) Superintendent Hambrick told Ms. Harvey that as the investigation was still open and ongoing, he would follow-up with her. (*Id.* at 66:1–4.) However, Superintendent Hambrick never did. (*Id.*; *see also* Affidavit of Glenn Hambrick ¶ 5.)

Ms. Harvey contacted Principal Amy again the following week. (Deposition of Ashley Harvey at 62:10–16.) She told Principal Amy that students were still watching the video in class. (*Id.*) However, she did not report any names or specific incidents. (*Id.*)

On March 6, 2017, Principal Amy met with L.H. (Affidavit of Otis Amy ¶ 11; *see also* Deposition of L.H. at 30:23–31:7; Deposition of Christopher Hardy at 64:2–19; Dkt. No. 83 at 7.) Officer Hardy was present at that meeting. (Deposition of Christopher Hardy at 64:2–11.) At that meeting, Officer Hardy told L.H. that if her parents desired to make a complaint, they should contact him.[2,3] (*Id.* at 201:25–202:6.) Principal Amy also had L.H. give a written statement of what

---

[2] Ms. Harvey never contacted Officer Hardy. (Deposition of Christopher Hardy at 48:22–23.)

[3] Officer Hardy also contacted Superintendent Hambrick after this meeting and was told that he should not get involved in the investigation as Coach Surratt and Principal Amy were handling it.

4

had occurred. (Affidavit of Otis Amy ¶ 11; Deposition of Christopher Hardy at 64:20–22.) However, L.H. never reported the names of any students who had viewed or distributed the video. (Deposition of L.H. at 34:16–35:7, 36:5–13.) She also never reported any incidents of continuing harassment beyond what was reported by her mother in this initial report. (*Id.* at 31:4–7.)

In March 2017, Ms. Harvey reported the incident to the Federal Bureau of Investigation ("FBI"). (Deposition of Ashley Harvey at 55:8–13; *see also* Dkt. No. 83-8, Ex. H at 4 (DHS Records).) The FBI and the Department of Homeland Security ("DHS") conducted their own investigation, which included interviews of various CISD officials and sixteen minors. (*See generally* DHS Records.) While the ultimate conclusions of this investigation are unknown, formal charges have never been brought against G.C.

## II. LEGAL STANDARD

### A. Title IX Post-Reporting Claim

The Supreme Court has established that a recipient of federal funding violates Title IX where the recipient is deliberately indifferent to known acts of teacher-student discrimination. *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 291 (1998). In *Davis*, the Supreme Court extended the deliberate indifference standard to acts of student-on-student harassment. *See generally Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999). More specifically, the Supreme Court concluded that:

> funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

*Id.* at 650. "A recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action." *Id.* at 644. In other words, the deliberate indifference must "cause students

to undergo harassment or make them liable or vulnerable to it." *Id.* Importantly, "the harassment must take place in a context subject to the school district's control." *Id.* When evaluating a school's response, the Supreme Court further held that the actions of school administrators are deliberately indifferent "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 648–49. The Supreme Court went to great lengths to stress the limitations on a recipient's liability under Title IX. For example, "simple acts of teasing and name-calling among school children" or "a mere decline in grades" do not rise to the level of severe and pervasive behavior sufficient to trigger liability under Title IX. *Id.* at 1675–76.

A plaintiff suing a school district for student-on-student harassment under Title IX must show that: (1) the district had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit," and (5) the district was deliberately indifferent to the harassment. *Sanches v. Carrollton-Farmers Branch Independent School Dist.*, 647 F.3d 156,165 (5th Cir. 2011).

The Fifth Circuit has noted that "plaintiffs seeking to prove actual knowledge must clear a high bar." *Kelly v. Allen Independent School Dist.*, 602 F. App'x 949, 953 n.3 (5th Cir. 2015). Constructive notice will not suffice. *Id.* at 953. "[A] district can escape liability if it can show 'that [it] did not know of the underlying facts indicating a sufficiently substantial danger and that [it was] therefore unaware of a danger, or that [it] knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.'" *Rosa H. v. San Elizario Independent School Dist.*, 106 F.3d 648, 659 (5th Cir. 1997) (quoting *Farmer v.*

6

*Brennan*, 511 U.S. 825, 843–44 (1994)). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.*

The bar to establish "deliberate indifference" is similarly high. "[N]either negligence nor mere unreasonableness is enough." *Sanches*, 647 F.3d at 167 (citing *Davis*, 526 U.S. at 642); *see also Stewart v. Waco Independent School Dist.*, 711 F.3d 513, 519 (5th Cir. 2013) ("Deliberate indifference is an extremely high standard to meet in and of itself.") (internal quotations omitted); *I.F. v. Lewisville Independent School Dist.*, No. 17-40722, 2019 WL 491790, at *5 (5th Cir. Feb. 8, 2019). "Schools are not required to remedy the harassment or accede to a parent's remedial demands, and 'courts should refrain from second-guessing the disciplinary decisions made by school administrators.'" *Id.* at 168–69 (citing *Davis*, 526 U.S. at 648). "[A] school district's response to the harassment or lack thereof must be clearly unreasonable in light of known circumstances, such that *the district's actions subjects the victim to further discrimination*." *Stewart*, 711 F.3d at 520 (emphasis added) (cleaned up); *see also K.S. v. Northwest Independent School Dist.*, 689 F. App'x 780, 784 (5th Cir. 2017) ("[A] school's response need not be effective in remedying the harassment, and no particular remedial action is required."). School districts "enjoy flexibility in responding to student-on-student harassment and 'may tailor their responses to the circumstances.'" *I.F.*, 2019 WL 491790, at *5. Indeed, a school district's response can be "inept, erroneous, ineffective, or negligent" and still not rise to the level of "deliberate indifference." *See id.* (quoting *Doe ex rel. v. Dallas Independent School Dist.*, 153 F.3d 211, 219 (5th Cir. 1998)).

On a motion for summary judgment, courts can determine that a school's response was not "clearly unreasonable" as a matter of law. *Id.*; *see also Kelly v. Allen Independent School*, No.

7

4:12-cv-756, 2013 WL 11740241, at *7 (E.D. Tex. Dec. 30, 2013), *rec. adopted*, 2014 WL 11515645 (E.D. Tex. Feb. 2, 2014), *aff'd on other grounds*, 647 F.3d 156 (5th Cir. 2011) (granting summary judgment in favor of school district); *Sanches*, 647 F.3d at 168–69 (affirming district court's grant of summary judgment in favor of school district); *Doe ex rel. Doe v. Dallas Independent School Dist.*, 220 F.3d 380, 388–89 (5th Cir. 2000), *cert. denied*, 531 U.S. 1073 (2001) (same); *K.S. v. Northwest Independent School Dist.*, 689 F. App'x 786–87 (5th Cir. 2017) (per curiam) (same); *I.F.*, 2019 WL 491710, at *12–13 (same).

### B. Title IX Official Policy Claim

"[W]here the Title IX violation in question is caused by an institution's discriminatory policy or custom, courts need not apply the actual notice and deliberate indifference framework typically used in cases involving instructional liability for sexual harassment or assault." *See Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 661 (W.D. Tex. 2017) (citing *Gebser*, 524 U.S. at 290 and *Davis*, 526 U.S. at 642). However, most of these cases involve an official policy that discriminates. *See Gebser*, 524 U.S. at 290; *Doe 1*, 240 F. Supp. 3d at 657–58.

As it relates to 42 U.S.C. § 1983, a plaintiff may state a claim against the school district by alleging a "persistent, widespread practice" that "is so common and well settled as to constitute a custom that fairly represents the [district] policy." *See Fennell v. Marion Independent School Dist.*, 963 F. Supp. 2d 623, 639 (W.D. Tex. 2013) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). "A 'handful' of instances, however, will not rise to the level of a pervasive custom or practice." *See id.* Importantly, when the actions of a school district's employees form the basis of liability, as opposed to those of the board of trustees, such actions "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice." *See id.* at

8

640. While the deliberate indifference standard has been adopted for both claims under Title IX and § 1983, *see Gebser*, 524 U.S. at 291, it is unclear whether § 1983's "unofficial policy" claim is applicable in the Title IX context.

## III. ANALYSIS

### A. Title IX Post-Reporting Claim

Defendant CISD's motion for summary judgment focuses on the "actual knowledge" and "deliberate indifference" prongs required to establish a school district's liability under Title IX. (*See* Dkt. No. 49 at 6 & n.3.) The Court will address each in turn.

#### *i.    Actual Knowledge*

Relying on the affidavits from Principal Amy, Coach Surratt, and Superintendent Hambrick, Defendant CISD argues that "[p]laintiffs have never told Defendants about any employee viewing, distributing, or possessing the video or discussing the alleged video on campus, nor were they told the video was viewed on campus." (Dkt. No. 49 at 6.) Plaintiff responds with the testimony of L.H., her mother Ashley Harvey, and Officer Hardy who all state that Principal Amy was made aware that the video was being both distributed and viewed on campus.

Plaintiff has maintained that this lawsuit centers around not only G.C.'s act of taking the video but also the allegedly continuous on-campus harassment and conduct. (Dkt. No. 83 at 15.) However, Plaintiff presented no evidence that either L.H., her mother, or anyone else notified the school of any incidents of on-campus conduct beyond those that were initially discussed with Principal Amy, Officer Hardy, and Superintendent Hambrick. L.H. testified in deposition that she did not tell anyone at CISD about the continuous harassment. (Deposition of L.H. at 30:10–22; 31:4–7.) L.H.'s mother Ms. Harvey testified in deposition that she notified Superintendent Hambrick of the "watching and viewing of [the video] on his campus," including identifying a

9

class period during which the video was allegedly watched. (Deposition of Ashley Harvey at 110:3–111:3.) However, beyond this one generalized discussion with Superintendent Hambrick and the initial report to Principal Amy,[4] there is no evidence that the school had actual notice of continuous on-campus harassment and conduct related to the video. Even more troubling, Plaintiff has presented no evidence from a witness who personally viewed the video on campus. Nor has Plaintiff presented any evidence from other parents of students at Carthage High School who may have heard about the video.

Without evidence of CISD's actual knowledge of the allegedly continuous harassment, there exists no facts by which CISD could have drawn an inference that a substantial risk of serious harm to L.H. existed. *See Rosa*, 106 F.3d at 659. Moreover, Plaintiff presented no evidence that any CISD official even made that inference, which is required to establish actual knowledge. *See id.* Plaintiff essentially argues that the harassment was so pervasive that the school should have known about it. (Dkt. No. 83 at 4, 15.) However, the Fifth Circuit is clear that constructive notice is not enough. *See Rosa*, 106 F.3d at 658 (rejecting the application of Title VII's constructive notice standard to Title IX liability).

Consequently, the Court finds that Plaintiff has failed to meet the high bar required to establish CISD's actual knowledge. The Court thus concludes as a matter of law that CISD did not have actual knowledge of harassment sufficient to trigger liability under Title IX. For this reason alone, the Motion should be granted.

---

[4] Plaintiff also relies on Officer Hardy's testimony that Principal Amy told him the video "had been circulating about campus and viewed by at least 20-25 students and 1-2 football coaches." (Deposition of Officer Hardy at 65:3–7.) However, this testimony is directly rebutted by that of Ashley Harvey who testified that she gave Principal Amy the name of "at least three" and "possibly four" students who had either seen or were distributing the video. (Deposition of Ashley Harvey at 20:15–21.)

## ii. Deliberate Indifference

Defendant CISD argues that the school's response was not clearly unreasonable because the school was only notified of one isolated incident (the off-campus video recording); CISD was told to allow the Carthage Police Department to investigate the matter; and even though it was not required to discipline G.C., the school nonetheless gave him the maximum punishment permitted under CISD's rules of extra-curricular participation.[5,6] (Dkt. No. 49 at 11.) Plaintiff, relying on non-binding authority,[7] argues that the determination of deliberate indifference is "one better left for the trier of fact." (Dkt. No. 83 at 17.) Pointing to inconsistencies in the school's story of how it punished G.C., Plaintiff essentially argues that CISD's response amounted to no response at all.

Like actual knowledge, Plaintiff faces a high bar to demonstrate a school district's deliberate indifference. *See Sanches*, 647 F.3d at 167. The Fifth Circuit is clear that it is not a district court's duty to question a school's response. *I.F.*, 2019 WL 491790, at *5. Here, Principal Amy promptly conducted an investigation after he was first made aware of the video. He immediately notified Officer Hardy to make him aware of the situation. He then met with Coach Surratt, and together they interviewed G.C. and searched his cell phone for the video.[8] Principal Amy also interviewed the two students who had reportedly seen the video. He called L.H. into his office while Officer Hardy was present and had her give a written statement. Without any reports of continuous on-campus harassment or any indication thereof, Principal Amy waited for the

---

[5] Such "maximum punishment" was that he run 20 miles and sit out of one baseball game.

[6] CISD also argues that it had "no control over G.C.'s private conduct off campus or his use of the worldwide web to publish the video," but this is a rather minor point in the motion and CISD does not elaborate on it. (*Id.*) Without more, the Court cannot fully evaluate this argument.

[7] Plaintiffs do not cite a single Fifth Circuit case addressing the deliberate indifference standard. (Dkt. No. 83 at 17–23.)

[8] Importantly, the video was not found on G.C.'s cell phone.

authorities to complete their investigation. Even though no formal charges were brought against G.C., the school still punished him under its extra-curricular policies. CISD also held an assembly for all high school students on the dangers of photos and the internet.[9] (Affidavit of Otis Amy ¶ 16; Affidavit of Glenn Hambrick ¶ 9.). Plaintiff argues that CISD's response was "inept, erroneous, ineffective, or negligent." Even if such is taken as true, it does not rise to the level of deliberate indifference as defined by the Fifth Circuit.

There is also no evidence that CISD's actions, or lack thereof as Plaintiff argues, subjected L.H. to further discrimination. *See Stewart*, 711 F.3d at 520. The Court thus finds as a matter of law that Plaintiff cannot establish CISD's deliberate indifference.

### B. Title IX Official Policy Claim

CISD argues that its policies prohibit sexual discrimination and discrimination. (Dkt. No. 49 at 15.) Plaintiff responds that CISD has what amounts to an "unofficial" policy to protect its football team. (Dkt. No. 83 at 23–22.) However, the only evidence that Plaintiff put forth is the testimony of Officer Hardy. (*See id.* (citing exclusively to Officer Hardy's declaration or deposition).) Even assuming there is a viable "unofficial policy" claim under Title IX,[10] Plaintiff has hardly advanced enough evidence to establish as a matter of law that the policy of protecting its football team was a persistent, widespread practice. Plaintiff does not even point to a "handful" of incidents—it only points to two. Plaintiff has failed to demonstrate that CISD had a persistent, widespread policy of protecting its football team. As such, Defendant is entitled to summary judgment with respect to Plaintiff's "unofficial policy" claim.

---

[9] Plaintiff submitted evidence that this assembly was not related to the incident at issue in this lawsuit. (Dkt. No. 83 at 21.) The overlapping context suggests otherwise. Regardless, CISD held an event to educate its students on the dangers of the internet—a topic directly related to this lawsuit.

[10] Plaintiff relies only on cases discussing claims under § 1983 and does not cite a single case addressing an "unofficial policy claim" under Title IX.

12

**IV.   CONCLUSION**

For the reasons stated above, Defendant CISD's Motion for Summary Judgment (Dkt. No. 49) is **GRANTED**. The Court will enter a final judgment consistent herewith.

**So ORDERED and SIGNED this 6th day of March, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE